# Corey v. Wadsworth.

*Bill in Equity to Set Aside Sale by a Corporation as Fraudulent.*

1. *The capital stock of a corporation a trust fund in the hands of directors.*—The governing body or directors of a corporation hold the capital stock therein as a trust fund, in order that it may be preserved and administered. primarily, for the benefit of creditors, and secondarily, for the benefit of the stockholders.

2. *Insolvent corporation; officer or director can not be a preferred creditor.*—A member of the governing body of an insolvent corporation, of which corporation he is a non-secured creditor, can not be made a preferred creditor in the administration or disposition of the corporate assets; but the assets must be distributed *pro rata* among all the non-secured creditors. If, however, valid liens have been created in favor of such officer or member, supervening insolvency can not destroy or impair them.

3. *Same.*—The directors or officers of an insolvent corporation are trustees for the creditors, and must manage its property and assets with strict regard to the interests of its creditors; and if they are themselves creditors, while the insolvent corporation is under their management, they can not secure to themselves any preferment or advantage over other creditors.

4. *When corporation is insolvent.*—A corporation is insolvent, when its assets are insufficient for the payment of its debts, and it has ceased to do business, or has taken. or is about to take a step, which will practically incapacitate it from conducting the corporate enterprise with reasonable prospect of success, or its embarrassment is such that early suspension and failure must ensue.

APPEAL from the City Court of Decatur, sitting in equity. Heard before the Hon. W. H. SIMPSON.

The bill in this case was filed by the appellee, W. W. Wadsworth, on January 20, 1891, against the appellant, Lorenzo Corey, and the Decatur Building Supply Company.
xcix.

[Corey v. Wadsworth.]

The prayer of the bill was to have a pretended sale and transfer, by the Decatur Building Supply Company to the defendant Corey, set aside as fraudulent and void, and that the said Corey be required to account for the value of the assets of the said Building Supply Company, transferred to, appropriated and converted by him. The facts alleged in the bill are set out at length in the opinion.

The respondent Corey demurred to the bill on the following grounds : 1st. That while the bill shows the respondent Corey was a creditor of the said Decatur Building Supply Company, and received the property alleged to have been conveyed to him, in payment and extinguishment · of such liability, it does not aver that said property was · received at an unfair or unreasonable value. 2d. That it is shown by said bill that the respondent Corey received the property in extinguishment of a debt due him from the Building Supply Company, but it is not shown that the price was inadequate to the value of the property, or that a benefit was reserved to said company. 3d. It is shown that the respondent Corey was a creditor of said company, and although it is averred that the effect of the sale to him was to hinder, delay and defraud the creditors of said company, it is not shown by said bill that the said Corey went beyond the purpose of extinguishing the liability of said company to him. 4th. The said bill seeks to set aside as fraudulent the sale by said company to Corey, and at the same time alleges the conversion by him of certain assets of the company, and seeks an account for the same. 5th. Multifariousness. 6th and 7th. That the bill was vague, uncertain and indefinite.

Upon the submission of the cause, upon this demurrer, the court overruled it; and the decree in this behalf is here assigned as error.

BRICKELL, HARRIS & EYSTER, for appellant. (No brief came into the hands of the reporter.)

E. W. GODBEY, contra.—1. Corey's position as director and president imposed upon him the obligations of a trustee to the corporation and its stock-holders. But when the corporation's insolvency supervened, neither the corporation, nor its stockholders (as such) could have any pecuniary interest whatever in its property. The officers then became trustees for the creditors, who were the only class who could honestly have any actual interest in its assets. If an officer holds a debt against the company, he is forbidden

[Corey v. Wadsworth.]

by all the the laws of trusts, and by every consideration of public policy and sound reason, from preferring himself. *Bank of St. Mary's v. St. John, Powers & Co.*, 25 Ala. 566, 611; Wait on Insolvent Corporations, 507; 2 Morawetz on Corporations, § 787; *Olney v. Conanicut Land Co.*, 18 Atlantic Reporter, 181; 2 Waterman on Corporations, 133, 139; *Drury v. Cross*, 7 Wallace 299; *Howe v. Sandford Fork & Tool Co.*, 44 Fed. Rep. 231; *Lippincott v. Carriage Co.*, 25 Fed. Rep. 577; *Consolidated Tank Line Co. v. Kansas City Varnish Co.*, 45 Fed. Rep. 7; *Sweeney v. Grape Sugar Co.*, 8 American State Rep. 89; *Richards v. New Hampshire Insurance Co.*, 43 New Hampshire 263; *Haywood v. Lincoln Lumber Co.*, 64 Wis. 639; *Beach v. Miller*, 130 Ill. 162; 23 American Law Review, 1011; *Roseboom v. Warner*, 23 N. E. Rep. 339; *Sicardi v. Keystone Oil Co.*, 24 Atlantic Reporter 163.

2. The pretended liability ostensibly extinguished by the sale by the insolvent corporation to its president, Corey, was not, strictly speaking, a contingent one; but when the corporation became hopelessly insolvent, the contingent liability of Corey, as a surety, became, to a great extent, fixed and absolute. A large number of the adjudged cases denying the director's right to a preference arose upon a state of facts similar to the present—the director being only a surety.—*Olney v. Land Co., supra; Drury v. Cross, supra; Howe v. Sandford Fork & Toole Co., supra; Consolidated Tank Line Co. v. Kansas City Varnish Co., supra; Roseboom v. Warner, supra.*

3. In addition to being surety of the Supply Company, with respect to the debt it pretended to be owing the bank, and President and a Director of the Supply Company, Corey was also a heavy stockholder, and a director in the creditor bank; and when Corey took the goods in payment of the debt due the bank, he not only secured a preference to himself individually, but also at the same time and by the same act secured a preference and the payment of an otherwise almost worthless debt, with usurious interest, to the fiscal institution, in which he was very largely interested.

4. The bill and exhibits show that all the executive officers of the insolvent corporation, who could have been instrumental in making the sale to Corey, were either co-guarantors with Corey of the pretended debt to the bank, or directors or stockholders in the bank (some had all three of these connections) except Hoy, the General Manager, and he was Corey's brother-in-law; and, therefore, there was no one present interested in seeing that even common

xcix.

[Corey v. Wadsworth.]

fairness, within the scope of the transaction, should prevail. It was to the direct pecuniary interest of each officer, that this particular debt should be gotten rid of; it was not to the interest of any one of them, that value should be paid. Every interest there assembled or consulted was in direct hostility to the interests of these general creditors. A sale under such circumstances is in contravention of sound public policy.

5. By this sale, if not otherwise, the corporation was gutted. All the sash, doors, blinds, transoms and shingles were disposed of. Dealing in these articles was the chief business of the corporation. Its chief official could not trust it till the maturity of his debt; but to pay that, not yet due, must strip it of every one of the staples of its stock.

6. If the right of preference be accorded, no outside dealer would extend credit to a corporation, since the very wares he might sell, could and would be used to pay the director, whose debt was kept secret or simulated, to the total exclusion of the general outside creditors.

7. If the right of preference be accorded, corporate disasters will be more frequent. The failure of a corporation entails no liability on directors and does not affect their credit. Failure of a natural person does entail such consequences. Individual profit, at the expense of the corporation, will be the rule.

STONE, C. J.—The present case is an appeal from an interlocutory order of the City Court, sitting in equity, by which Corey's demurrer to Wadsworth's bill was overruled. The case presents a question of very grave importance to the commercial world.

The substantial facts of the case made by the bill are as follows:

At a time anterior to the latter part of the year 1887, "The Decatur Building Supply Company" was incorporated under the general laws of Alabama, Decatur being the place of its business habitation. Wadsworth, the complainant, at various times between the latter part of the year 1887 and May 19, 1888, sold and shipped to the Decatur Building Supply Company lumber and shingles, and, at various dates, drew on the corporation for payment at 90 and 120 days. The several drafts were accepted, but have not been paid. The aggregate sum of the several accepted drafts is fourteen hundred dollars, all of which was long past due when this bill was filed in January, 1891. The bill then

[Corey v. Wadsworth.]

charges that Lorenzo Corey, one of the defendants, became a stockholder in said Decatur Building Supply Company "in the early part of February, 1888, and thereafter he became a member of the board of directors and president of said company, which position he held at the time of the occurrence of the matters and transactions hereinafter complained of, and has never resigned or been removed therefrom ; and that at the time he so became connected with the said Decatur Building Supply Company the same was prosperous and in a solvent condition." The bill then avers that about the fifteenth of May, 1888, the said Corey, together with others, officers and stock-holders of said corporation, entered into an agreement with the Exchange Bank, by which they bound themselves as sureties, or guarantors of said Decatur Building Supply Company, for the payment to the bank of such indebtedness as the Building Supply Co. might incur, not exceeding six thousand dollars. It was then charged that before the end of June, 1888, it was "pretended" that the bank had lent to the Building Supply Company said sum of six thousand dollars, and had taken its notes therefor, due at sixty and ninety days.

The remaining charges of the bill, material to the case in hand, may be summarized as follows: One Hoy, brother-in-law of Corey, was general manager of the Building Supply Co., and was its vice-president. From the 19th to 23d of July, 1888, said company, through Corey and Hoy, sold— ("pretended to make sale of")—a large part of its stock in trade to Corey, in consideration that he would and did assume to pay and pay the said debt of six thousand dollars to the Exchange Bank, of which Corey and other officers and stockholders of the Building Supply Company had become guarantors. The said debt was presently paid by Corey, and he took possession of the stock in trade so purchased, and removed it to a building of his own. This was done long before the maturity of the debt to the bank, of which Corey and other officers of the Supply Co. were guarantors. The bill then charges, that, "At the time of the aforesaid pretended purchase by Corey of Decatur Building Supply Company, it (the corporation) was hopelessly insolvent, its liabilities due and past due being greater by far than its assets ; and within three or four days after the consummation of the transfer to Corey, on to-wit, 26th day of July, 1888, the said Decatur Building Supply Company, acting through said Corey as its president, assigned all its remaining assets to a trustee for the benefit of its general creditors, whose just claims and demands against said com-

xcix.

pany, amounted to more than twenty-two thousand dollars; to pay which, property was assigned of value not sufficient to pay more than fifteen per cent." Corey and the Decatur Building Supply Co. are made defendants to the bill.

Before the demurrer was filed to the bill, it was amended, so as to make it a "bill in behalf of complainant and all other creditors of the Building Supply Company, who may come in and make themselves parties complainant hereto, and assume their proportionate share of the costs." Under this amendment, S. Truscott came in by petition, and united in the prayer for relief.

The bill, in a general way, charges that Corey took over-pay in the matter of the guaranty for which he with others was bound. It also charges that the money advanced or paid by the bank "was paid, not to the Decatur Building Supply Company, but to the officers making the guaranty of the loan, for their own emolument." These questions need no extended mention here. If the Supply Co. did not get the benefit of the money advanced by the bank, of course it was under no obligation to indemnify the guarantors of the loan; and in taking pay from the Supply Company on that account, Corey misappropriated the assets, and rendered himself liable to the creditors of the insolvent corporation, to the extent of the misappropriation. So, if he overpaid himself for the liability he was under as guarantor to the bank, the same rule will apply to the excess. It is against the policy of the law to permit the president, or any director of a corporation to realize a personal profit, or side specula-tion, in any dealing he may have with the corporation. 1 Wat. Corp., § 163. These matters, however, are not pressed in argument, and we will not consider them farther.

The question for our consideration, briefly stated, is this: Can a member of the governing body of an insolvent corpo-ration, of which corporation he is a non-secured creditor, be made a preferred creditor in the administration or dispo-sition of the corporate assets; or, must the assets be dis-tributed *pro rata* among all the non-secured creditors? Of course, if valid liens have been created, supervening insol-vency can not destroy, or impair them. The question in this case has been industriously and ably argued on both sides.

It is the settled law of this State that a debtor—a natural person—though insolvent, may of his effects, whether money or property, pay one or more creditors in full, although he thereby disables himself to pay his other debts. There are conditions or limitations to this right. The paying debtor

must not by the transaction secure any benefit to himself, other than the discharge of the obligation he rested under to pay the debt. If paid in property, it must be at its reasonably fair market value. If the property be in value so much in excess of the debt paid with it as to necessitate a substantial payment to the insolvent debtor therefor, and such substantial excess is so paid, this is treated as securing a benefit to the debtor, by enabling him to shuffle such excess out of the reach of his other creditors; and the transaction is fraudulent. If the preference of one or more creditors by an insolvent debtor can withstand these tests, the motive or purpose of the debtor in giving the preference becomes an immaterial inquiry.—3 Brick. Dig. 517, §§ 137-8; *Hodges v. Coleman*, 76 Ala. 103; *Meyer v. Sulzbacher*, *Ib*. 120; *Shealy v. Edwards*, 78 Ala. 176; *Levy v. Williams*, 79 Ala. 171; *Leinkauff v. Frenkle*, 80 Ala. 136; *Tryon v. Flournoy*, *Ib*. 321; *Montgomery v. Bayliss*, 96 Ala. 342; *Ellison v. Moses*, 95 Ala. 221; *Tiffany v. Boatman*, 18 Wall. 375; *Grant v. National Bank*, 97 U. S. 80.

There are many authorities which hold that a solvent and going corporation can secure a member of the governing board in the payment of a debt due him; and the fact that the corporation becomes insolvent afterwards, does not impair the validity of his security. We are not inclined to question the correctness of this principle; but we will explain hereafter more fully, what we mean by a solvent corporation.—*O'Connor v. Coosa Furnace Co.*, 95 Ala. 614; *Lexington L., F. & M. Ins. Co. v. Page*, 17 B. Mon. (Ky.) 412; *Reichwald v. Commercial Hotel Co.*, 106 Ill. 439; *Paulding v. Chrome Steel Co.*, 94 N. Y. 334; *Twin-Lick Oil Co. v. Marbury*, 91 U. S. 587.

There are some authorities which hold that an insolvent corporation may make an assignment, preferring even its own directors, or members of its governing body, if they be creditors of the corporation. That the directors have the same rights as creditors of natural persons have, and that the relation they sustain to the corporation and to its assets, does not impair that right, if in fact their claims be *bona fide* debts of the corporation.— *Whitwell v. Warner*, 20 Vt. 425; *Buell v. Buckingham*, 16 Ia. 284; *Garrett v. Burlington Plow Co.*, 70 Ia. 697; *Planters Bank v. Whittle*, 78 Va. 737; *Burr v. McDonald*, 3 Grat. 215.

The governing body or directory of a corporation holds the capital stock of a corporation in the confidence that it will be preserved and administered, primarily for the benefit of creditors, and secondarily for the benefit of the stock-
XCIX.

holders.—*Com. Fire Ins. Co. v. Board of Revenue, ante,* p. 1;
14 So. Rep. 490; *Friend v. Powers,* 93 Ala. 114. As long
ago as 1824, Justice Story, in *Wood v. Dummer,* 3 Mas.
(U. S.) 308, said : "It appears to me very clear upon general
principles, as well as the legislative intention, that the cap-
ital stock of banks is to be deemed a pledge or trust fund
for the payment of the debts contracted by the bank." In
*Bank of St. Mary's v. St. John,* 25 Ala. 566-612, this court,
in 1854, used this language: "The capital stock of the bank,
with all its property and assets, is to be regarded as a trust
fund for the payment of creditors; and the stockholders,
directors and agents of the bank are trustees for their benefit,
and as such may be made to discover and account in chan-
cery." So, in *Bradley v. Farwell,* 1 Holmes, 433, the court
said : "The relation between the directors of a corporation
and its stockholders is that of trustee and *cestui que trust.*"
See Wait on Corporations, p. 507, Note 1, and citations ;
*Elyton Land Co. v. Birmingham Warehouse Co.,* 92 Ala. 407.
  In *Smith v. St. Louis Mutual Life Ins. Co.,* 3 Tenn. Ch.
Rep. 502, that able chancellor, Cooper, said : "Nor is it
denied that our decisions have settled that the assets of an
insolvent corporation constitute, under our laws, a trust-
fund for the payment of creditors of the corporation, in the
order or priority fixed by law, and if there be no priority,
then *pro rata,* and that no amount of diligence on the part
of one or more of the creditors can defeat the right of others
to such distribution. . . . . . The object is, in cer-
tain contingencies, to prevent unseemly scrambles, and to
secure, what equity delights in, equality of rights among all
who are equally meritorious.".
  We have cited authorities which affirm the right of a di-
rector of an insolvent corporation to have himself made a
preferred creditor in a case such as we have in hand. There
are authorities the other way. In 2 Morawetz on Corpora-
tions, § 787, it is said : "The equitable interests of the share-
holders and creditors are altered by the insolvency; and the
directors or managing agents, who originally stood in the
fiduciary relation to the company, become placed in a fidu-
ciary relation to its creditors. The powers of management
vested in the directors of an insolvent corporation, which
has ceased to carry on business, are solely powers to manage
the assets in trust for its creditors and for their benefit. It
has been held, therefore, that the directors of an insolvent
corporation are bound to manage the remaining assets with
strict regard for the interests of its creditors. . . . . .
Directors of an insolvent corporation, who have claims

against the company as creditors, must share ratably with the other creditors in a distribution of the company's assets. They can not secure to themselves any advantage or preference over other creditors, by using their powers as directors for that purpose. These powers are held by them in trust for all the creditors, and can not be used for their own benefit."

In *Richards v. New Hampshire Ins. Co.*, 43 N. H. 263, the head-note expresses the principle decided in the following language : "Directors and managers of insolvent corporations are trustees of the funds, as well for the creditors as for the corporation, and are bound to apply them *pro rata*, and can not use them to exonerate themselves to the injury of other creditors."

In the case of *Haywood v. The Lincoln Lumber Co.*, 64 Wis. 639, the court decided, that "The directors and officers of an insolvent corporation are trustees for the creditors, and must manage its property and assets with strict regard to their interests ; and if they are themselves creditors, while the insolvent corporation is under their management, they can not secure to themselves any preference or advantage over other creditors."

In *Sweeney v. Grape Sugar Co.*, 30 West Va. 443, it was held, that "Directors of corporations are trustees for the corporation, and within the rule that one holding a fiduciary relation to trust property can not, either directly or indirectly, become the purchaser of such property, or transfer it to his own use, or for his own benefit, and if he does, the sale or transfer is voidable, and will be set aside at the mere pleasure of the beneficiaries, though such fiduciary may have paid full price and gained no advantage."

In *Beach v. Miller*, 130 Ill. 162, it was said : "The directors of an insolvent corporation are trustees of its assets for its creditors, and can not give the funds away, or sell them at a sacrifice in the interest of others, even with the consent of the stockholders; and if themselves creditors, they can not receive any advantage or preference in the payment of their claims at the expense of the other creditors." To the same effect, and by the same court is the case of *Roseboom v. Warner*, 23 N. E. Rep. 339.

In *Olney v. Conanicut Land Co.*, 18 Atl. Rep. (R. I.) 181, it was held, that "The directors of an insolvent corporation are trustees for the creditors of the corporation, and they can not obtain priority over a creditor by taking mortgages to themselves to secure them for advances and for their indorse-

[Corey v. Wadsworth.]

ment of the notes of the corporation, after the creditor has brought suit, and when the company is insolvent."

In *Howe, Brown & Co. v. Sandford Fork & Tool Co.*, 44 Fed. Rep. 231, it was decided that "Where a corporation, while still a going concern, is insolvent, a mortgage on its property, executed to secure the directors, who are liable as indorsers for it to a large amount, is invalid as to general creditors, and that though the mortgage was procured by the directors without any actual fraudulent intent."

In *Consolidated Tank Line Co. v. Kansas City Varnish Co.*, 45 Fed. Rep. 7, the "Directors of an embarrassed corporation, holding claims against it which they wished to protect, had the notes of the company payable to themselves drawn and antedated, and procured them to be discounted by defendant bank. They then caused to be executed a deed of trust conveying all the assets of the company as security for these notes, among others. *Held*, in a proceeding by unsecured creditors to set it aside, that, being a security for debts upon which the directors were themselves liable as indorsers, it was in effect a preference to themselves, and fraudulent and void."

In Amer. Law Review, Vol. 23, No. 6, p. 1009, there is a strong article maintaining the same doctrine announced in the cases cited above, with a reference to many adjudged cases. See also *Jackson v. Ludeling*, 21 Wal. 616; *Debney v. Bank of State of South Carolina*, 3 Rich. (S. C.) 124; *Drury v. Cross*, 7 Wal. 299: *Thorington v. Gould*, 59 Ala. 461; *Goodwin v. McGehee*, 15 Ala. 332.

The question we have been considering is one of grave and growing importance in this State, and we have, therefore, felt it our duty to collate the authorities. It will be seen that the modern authorities, almost without exception, utter the same strong condemnatory language of any and all attempts by directors of an insolvent corporation to have themselves indemnified and preferred, over the other creditors of the company. The assets are, in a sense, a trust fund in their hands for the payment of the corporation's debts, and it is both their moral and legal duty to maintain perfect equality in their administration and disbursement; at least to the extent that they can not prefer themselves. We need go no farther in this case.

In looking into the authorities, it will be seen that the right of the directors of an insolvent corporation to prefer themselves as creditors, is withheld from them, not alone on the ground that the assets are a trust fund, of which they are trustees for the creditors. Notice is taken of the superior

[Corey v. Wadsworth.]

knowledge they necessarily have, and the great advantage this would, and does give them in a race of diligence. But the principle extends farther. In a conveyance by which they attempt to pay or secure themselves, that necessary element of all valid contracts—opposing interest in the seller and buyer—is wanting. They are both seller and buyer. Such transactions by a trustee are always voidable, on the ground of public policy.

At what stage of a corporation's affairs must it be pronounced insolvent, so as to bring it within the principle we have declared? It is not enough that its assets are insufficient to meet all its liabilities, if it be still prosecuting its line of business, with the prospect and expectation of continuing to do so. In other words, if it be, in good faith, what is sometimes called a *going* business or establishment. Many successful corporate enterprises, it is believed, have passed through crises, when their property and effects, if brought to present sale, would not have discharged all their liabilities in full. We feel safe in declaring that when a corporation's assets are insufficient for the payment of its debts, and it has ceased to do business, or has taken, or is in the act of taking, a step which will practically incapacitate it for conducting the corporate enterprise with reasonable prospect of success, or its embarrassments are such that early suspension and failure must ensue, then such corporation must be pronounced insolvent.

Under the definition we have given, we hold that the sale, charged in the bill to have been made by the Decatur Building Supply Company to Corey, was, if the averments be true, an attempted preference by an insolvent corporation of a member of its governing board, and that he is chargeable as a trustee with the property and effects so received, or their value, for the equal benefit of all the creditors.

The question we have been considering may possibly have been remotely touched in the case of *Globe Iron R. & C. Co. v. Thatcher*, 87 Ala. 458; 6 So. Rep. 366. To the extent of the conflict, if there be such, the present opinion must prevail.

The decretal order of the chancellor, overruling the demurrer to the bill, must be affirmed.

McCLELLAN, J. dissenting.