# Mary Lee Coal & Railway Co. v. Knox & Co.

## Trial of the Right of Property.

1. *Debt; sufficiency of evidence to establish it.*—Where on the issue as to whether there was an indebtedness due to a claimant to whom property was conveyed in payment thereof, many witnesses testified positively to the existence of the alleged debt, and the books of the alleged debtor, containing erasures. interlineations and irregular entries, showed that the debt was due, and there was no objection made to the alterations and irregularities in the account shown in the books and no explanations called for, the suspicious circumstances appearing in the books, without other evidence, are not sufficient to over come the direct, positive evidence of the witnesses, and the debt will be considered established.

2. *Same; payment; when shown.*—Where there is a mutual agree‑ment between a creditor and his debtor and his debtor's debtor that the latter's debt to the creditor's debtor and the debt due the cred‑itor were to be paid and satisfied by the sale and delivery of certain property by the debtor's debtor to the creditor, and in accordance with such agreement the property was delivered into the sole and ex‑clusive possession and control of the creditor as payment, and entries of satisfaction and payment of such of the debts were made in the books of each of the creditors, respectively, there is a payment of each of the debts by the sale and delivery of the property as stipu‑lated; and, in the absence of fraud, the title to the property vests ab‑solutely in the creditor to whom it is conveyed.

3. *Corporation; invalid transfer of assets by directors of insolvent cor‑poration.*—When an insolvent corporation, acting by its governing body, sells or transfers its assets or any portion of them, on such terms and conditions as to place the property beyond the reach of its creditors, thereby protecting the stockholders or directors or any of them from loss, and yet securing a benefit to those who effect the sale or transfer, such sale or transfer, whether consummated directly or through another corporation, of which said directors are the owners and beneficiaries, is void as to those persons making the sale and who are benefitted thereby.

4. *Same; transaction between parties who are stockholders or directors in a separate corporation.*—In arriving at the *bona fides* of transactions between separate corporations, which have the same persons for di‑rectors and stockholders, the corporations should not be regarded as separate, distinct entities from the stockholders, and transactions

sanctioned as valid which, if done by individuals under similar circumstances, would be set aside and annulled; nor should there be applied to the corporations a different rule than that applied to individuals acting as such in similar transactions, and thereby disable a corporation from paying some creditors at the expense of others under any and all circumstances.

5. *Same; same; facts of present case.*—On the levy of an attachment upon iron in a suit against a corporation, there was interposed a claim to the property so levied upon. On the trial of the claim suit the following facts were disclosed: The corporation in the attachment suit was indebted to another corporation, which was indebted to the claimant. By mutual agreement between the three parties, the debt of the defendant and the debt of the other corporation to the claimant were paid and satisfied by delivery by the defendant to claimant of the iron levied upon. The general manager and superintendent of both corporations, through whom such payment was consummated, and who was a director and stockholder in both corporations, was a brother-in-law of the claimant; but the claimant had no interest in either corporation, except as creditor of the corporation to whom the defendant was indebted. There was evidence tending to show that at the time of the sale and delivery of the iron to the claimant, the defendant corporation was insolvent. But it was uncontroverted that the defendant was a going concern at the time of the sale, and so continued up to the levy of the attachment, which was a month after the sale and delivery of the iron. The claimant denied notice of the insolvency of the defendant, and it was shown that, although claimant had access to the books of his debtor corporation, they furnished no evidence or indication of the financial condition of the defendant. *Held:* That the claimant received the iron in payment of a debt without notice of the insolvency of the defendant corporation, and therefore, acquired a perfect title thereto as *bona fide* purchaser, and should be protected as such.

APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE. -

The facts of the case are sufficiently stated in the opinion.

SMITH & LOWE and GOODHUE & SIBERT, for appellant.

DENSON, BILBRO & BURNETT, *contra.*—1. The transaction between the two corporations, the Etowah Furnace Co. and the Etowah Mining Co., through the same general manager, is valid, and can only be assailed by a creditor for fraud.—*O'Conner M. & M. Co. v. Coosa Furnace Co.*, 95 Ala. 614, and authorities cited. The con-

[Mary Lee Coal & Railway Co. v. Knox & Co.]

sideration of the sale of the iron to the Mining Co. by the Furnace Co. being fair and adequate, will be upheld, no benefit to the Furnace Company being rendered, even though the Furnace Company might have been insolvent.—*Pollock v. Meyer*, 96 Ala. 172, and authorities cited.

2. There is nothing in the case to show any fraud in the sale to the Mining Company. The Furnace Company got full value for the iron sold, and is still in debt to the Mining Company. If that sale was valid, of course it follows that the sale to Knox & Co. must stand. But even if it could be made to appear that the sale to the Mining Company by the Furnace Company was tainted with fraud, still, Knox & Co. will be protected, as they were *bona fide* purchasers. A *bona fide* purchaser from a fraudulent grantee, gets a good title as against the creditors of the fraudulent grantor.—*Thames v. Rembert*, 63 Ala. 561; 8 Amer. & Eng. Encyc. of Law, 756; 21 Amer. & Eng. Encyc. of Law, 569.

3. Knox & Co. are *bona fide* purchasers. (1.) They took the iron in payment or part payment of a debt about which there was no controversy. (2.) They took possession of the iron. (3.) They rented the ground on which to store it. (4.) They paid the freight on the iron to this point. (5.) Their account with their vendor was closed before the levy of the attachment. (6.) Their vendor, subsequent to the sale of the iron, and before the levy of the attachment, made an assignment of all its property. (7.) They paid full value. It is clear, therefore, that they can not be restored to the position they occupied before they bought the iron.—*Loeb & Bro. v. Flash Bros.*, 65 Ala. 526; *Spira v. Hornthall*, 77 Ala. 147; *Hornthall v. Schonfeld*, 79 Ala. 107; *Robinson v. Fairbanks*, 81 Ala. 132; *Frenkel v. Hudson*, 82 Ala. 158.

4. The notice of fraud, necessary to affect the title of Knox & Co. is notice to them. Notice merely to their vendor does not bind them.—*Martinez v. Lindsey*, 91 Ala. 334; *Hodges v. Winston*, 94 Ala. 576.

COLEMAN, J.—The Mary Lee Coal & Railway Company sued out an attachment against the Etowah Furnace Co., which was levied upon certain pig iron as the property of the defendant in attachment. E. L. Knox

& Co. interposed a claim to the property,. and under the
direction of the court, an issue was made up for the trial
of the right of property.   The case was tried without
the intervention of a jury, and the court found the issue
for the claimant.   The plaintiff introduced proof of its
demand, and that the pig iron was manufactured by the
Etowah Furnace Company.   The claimants deduced
title from an agreement between themselves and the Et-
owah Furnace Company and the Etowah Mining Com-
pany, and the delivery of pig iron to claimants in pursu-
ance of said agreement.   The evidence for the claimants,
if true, showed, that the Etowah Mining Company was
indebted to claimants, that the Etowah Furnace Com-
pany was indebted to the Etowah Mining Company, and
that by a mutual agreement between the three parties,
the debt of the Etowah Furnace Company and the debt
of the Etowah Mining Company to the claimants were
to be paid and satisfied, by the sale and delivery of the
pig iron to the claimants, and that this agreement was
concluded and fully performed, at least a month before
the issue and levy of the plaintiff's attachment.   The
evidence showed that one George Nixon was the general
manager and superintendent of both corporations, the
Etowah Furnace Company and the Etowah Mining Com-
pany, and a director and stockholder in both, and rep-
resented both corporations in the sale and delivery of
the pig iron, and in the payment and satisfaction of the
debt of the Furnace Company to the Mining Company
and of the Mining Campany to the claimants.   The evi-
dence shows that this transaction was consummated by
the authority of, or subsequent ratification of, a major-
ity of the directors and stockholders of both debtor cor-
porations.   The claimants, E. L. Knox & Co., had no
interest in either corporation as directors or stockhold-
ers, but were simply creditors of the Mining Company.
The members of the partnership of E. L. Knox & Co.
were brothers-in-law of George Nixon.   There was evi-
dence tending to show that at the time of the sale of the
pig iron the Etowah Furnace Company was insolvent;
and it is insisted in argument that from the circum-
stances of the case, the claimants had notice of the in-
solvency of the Furnace Company.   The claimants con-
trovert both of these charges.   The plaintiff in attach-
ment contends also that the debt claimed by E. L. Knox

& Co. was not a *bona fide* demand, but manufactured to defraud the creditors of the Etowah Furnace Company.

There are but three questions in the case: *First.* Did the Etowah Mining Company owe claimants? *Second.* Was the debt paid by the sale and delivery of the pig iron? *Third.* Whether the Etowah Furnace Company could prefer a debt due the Etowah Mining Company to the other creditors of the Furnace Company; the directors and stockholders of the two corporations being the same persons.

As to the first proposition, the books of the two corporations were in evidence. A very strong argument is made by appellant, based upon erasures, interlineations and irregularities in the manner of keeping the accounts and books, and which would have great force, if the appellant was in a position to avail itself of these circumstances. The balances struck, show that the debts were due. The parties testified to the correctness of the demands and of the books in their then condition. Those who kept the books were examined as witnesses and were detained in the court room. The erasures, interlineations and irregular entries, as entered, led to the balances. The plaintiff, in its cross-examination, did not call for explanations, or make any references to the matters now complained of. If the witnesses had been called upon to explain the alterations of items in the books and irregular entries, and had failed to make satisfactory explanations, a different inference would be authorized. We do not find an entry or correction or change made in the books that is necessarily inconsistent with the positive testimony of the indebtedness claimed to be due. We would not be justified in holding that the suspicious circumstances appearing in the books, were sufficient to overcome the direct, positive evidence of so many witnesses, without calling their attention to the circumstances and giving them an opportunity to explain, as should have been done on cross-examination.

We do not doubt that the facts of the sale and delivery constitute a payment. The amount entered on the books of the Etowah Mining Company to the credit of the Etowah Furnace Company, and also the credit entered on the account of indebtedness to E. L. Knox & Co. showing payment in pig iron, is not all the evidence

of payment. The iron was delivered to the claimants, and removed by them from the Furnace Company and placed upon their own grounds. The agreement was that the iron should be received in payment and satisfaction of their debt. It was so received, and had been in their sole and exclusive possession and control for a month before the levy of the attachment. E. L. Knox & Co. are not seeking to avoid the sale for fraud perpetrated on them by the two corporations or either of them. They stand upon the bona fides and validity of the transaction. Their debt against the Mining Company, under the agreement, was extinguished by the reception of the iron. Neither is it a case of a vendor asserting title to property sold to a fraudulent purchaser. The agreement and receipt of the iron, furnish a complete defense to the mining Company against the demand of the plaintiff. The case of Loeb & Brother v. Flash Brothers, 65 Ala. 526, and the principles decided do not apply. The cases are not analogous.

As to the third proposition. In the case of Corey v. Wadsworth, 99 Ala. 68, it was declared as to insolvent corporations "that the assets are in a sense a trust fund for the payment of the corporation's debts, and that it is both their [directors'] moral and legal duty to maintain a perfect equality, in their administration and disbursement, at least to the extent that they cannot prefer themselves." The principle declared in the case was, that the assets of an insolvent conporation are a trust fund, held by the directors in trust for the benefit of creditors, and that the directors cannot prefer themselves. If we were to concede the correctness of the principle as contended for, we do not see how they are available to the plaintiff in the present case. If the Etowah Furnace Company was insolvent at the time of the sale of the pig iron, so that its assets were held by the directors as trustees only in trust for all of its creditors, the plaintiff's remedy was in a court of equity where the rights of its creditors could be protected, and where alone the trust could be administered. The rule that a director of an insolvent corporation, cannot prefer himself, directly or indirectly, over other creditors, is but the application of a very familiar principle to the directors and stockholders of a corporation. No insolvent person who is a debtor, is

permitted to dispose of his property, by which a benefit is reserved to himself, to the prejudice of his creditors. This was the question of merit in the case of *Corey v. Wadsworth*, 99 Ala. 68, *supra*. Much that was said in that case should be regarded as *dicta*, although the doctrine declared is fully sustained in the very recent case of *Manufacturing Co. v. Hutchinson*, 63 Fed. Rep. 496, opinion by Mr. Justice HARLAN, and which seems to have been fully endorsed in the subsequent case of *Bosworth v. Bank*, 64 Fed. Rep. 615. In one sense, corporations are entities, but corporations and the stockholders are not separate and distinct entities for all purposes and in all respects. A corporation is a collective body composed of different persons.—*M. & O. R. R. Co. v. Nicholas*, 98 Ala. 124; Morawetz Corp., § 227. Whatever is of benefit to the corporation as a collective body, is a benefit to the stockholders of which it is composed. Corporations are controlled by and act through a board of directors or stockholders. When, therefore, an insolvent corporation acting by its governing body, which by reason of their relations to the corporation may know its condition and have advantages superior to other creditors, sells or transfers its assets or any portion of them on such terms or conditions as to place the property beyond the reach of its creditors, and thereby protect the members or any of them from loss, and yet secure a benefit to those who effect the sale and transfer, whether consummated directly, or through another corporation of which they are the owners and beneficiaries, such sale or transfer is in violation of the rule which prevails as to persons, and is void as to such persons making the sale and are thus benefitted. The rule is as much a necessity to prevent fraud, injustice and undue advantage on the part of the directors and stockholders of corporations, as to similar transactions between individuals. A person can not be a debtor to and creditor of himself; but by reason of the fact that the same persons may be the directors and stockholders of separate corporations, one of which may become the debtor of the other, and thus, though not in name and form, in fact, stockholders often sustain the relation of debtor and creditor to themselves. In arriving at the *bona fides* of transactions and motives of parties thus situated, for the prevention of fraud and undue advant-

age, and the administration of justice, courts should not regard corporations as separate, distinct entities from the owners and stockholders, and sanction as valid transactions which if done by individuals under the same circumstances would be set aside and annulled. We would not apply, however, to corporations, whether solvent or insolvent, which have not been dissolved or ceased to do business as a going concern, a different rule than that applied to individuals acting as such in this respect, and disable them from paying some creditors at the expense of others under any and all circumstances.— *Goodyear Rubber Co. v. George D. Scott Co.*, 96 Ala. 439.

There is evidence tending to show that at the time of the sale of the pig iron, the Etowah Furnace Company was not possessed of sufficient assets to pay off all its liabilities, and the proof shows that claimants had access to the books of their debtor, the Etowah Mining Company. It is uncontroverted that the Etowah Furnace Company was a going concern at the date of the sale, and kept its business up to its full standard up to the levy of the attachment; a month after the sale and delivery of the iron. It does not appear that the books of the Etowah Mining Company to which the claimants had access, furnished any evidence or indication of the condition of the Etowah Furnace Company. The claimants deny that they had notice or knowledge of the financial condition of the Etowah Furnace Company. The most material fact or circumstance tending to show notice, is that of relationship as brothers-in-law between claimants and George Nixon. Upon a fair consideration of the whole evidence, we do not think the plaintiffs have discharged the burden to bring notice or knowledge of the insolvent condition of their debtor, conceding that it was insolvent for the purpose of the argument, to the purchaser of the iron. Our conclusion is that the claimants received the pig iron at a price fairly equivalent to its value, in payment of an antecedent debt, without notice, and are protected as *bona fide* purchasers. This was the conclusion of the trial court, and its judgment must be affirmed.

Affirmed,