STATE OF NEBRASKA V. BANK OF OGALALLA ET AL., APPEL-
LEES, IMPLEADED WITH ALFRED P. ANDERSON ET AL.,
APPELLANTS.*

FILED JUNE 4, 1902.   No. 10,448.

Commissioner's opinion, Department No. 1.

1. **Bank:** NOMINAL CAPITAL STOCK: INDEBTEDNESS: CERTIFICATES OF DEPOSIT: CONSIDERATION: RECEIVER. A bank having a nominal capital stock of $25,000, and an indebtedness besides to the amount of $14,542,—its entire assets being only of the value of $21,400,—issued certificates of deposit for the amount of $12,500 to its several stockholders, and also $12,500 of new capital stock to take up the former capital stock. *Held,* That the certificates of deposit are without consideration, as against a receiver and creditors of the bank, and that without regard to when the creditors became such.

2. ———: RECEIVER: CERTIFICATE OF DEPOSIT: LIMITATION. The bank having gone into the hands of a receiver, the latter can maintain an action to recover payments made upon such certificates of deposit within four years of the time of commencing such action.

3. ———: STOCK: COLLATERAL: STOCKHOLDER: DEPOSIT CERTIFICATE. Another bank, which held as collateral a part of the $25,000 of previous stock, and surrendered the same, and accepted in lieu

---

*Rehearing allowed. Opinion modified. See opinion on page 27, *post.*

thereof one-half in new stock and one-half in certificates of deposit, stands as to this reduction of stock in the shoes of an ordinary stockholder, and can not recover against the receiver on its deposit certificates.

APPEAL from the district court for Keith county. Heard below before SULLIVAN, J. *Reversed.*

*F. H. Woods* and *Lamb & Adams* (*G. A. Adams, H. A. Reese* and *M. B. Reese,* on motion for rehearing), for appellants.

*Wilcox & Halligan* and *Beeler & Muldoon, contra.*

DAY, C.

On January 13, 1896, the Bank of Ogalalla failed. A few days later the state of Nebraska instituted this suit in the district court of Keith county, praying that a receiver be appointed to wind up its business. Upon a hearing the bank was adjudged insolvent, and one E. M. Searle, Jr., was appointed receiver to wind up its affairs. He duly qualified as such, took charge of its assets and property and proceeded to wind up its affairs. Subsequently A. P. Anderson and the Newport Savings Bank, of Newport, New Hampshire, who claimed to be creditors of the defunct bank, were permitted by the court to file separate petitions of intervention, praying an allowance of their respective claims, and also that the receiver be ordered to pay to them, upon their said claims, dividends amounting to 30 per cent., which had previously been declared upon claims against the bank. The receiver filed answers to the petitions of intervention and also cross-petitions praying for affirmative relief against each of the interveners, and that they be held to pay to the receiver the amount paid to them by the bank on certain certificates of deposit hereinafter mentioned. To the cross-petitions of the receiver the interveners filed answers. The issue thus raised will sufficiently appear in the further consideration of the case. The trial resulted in a judgment against both of the interveners. As to Anderson, the court dismissed his petition of intervention, and rendered judg-

ment against him upon the cross-petition for $1,513.65; and as to the Newport Savings Bank, the court dismissed its petition of intervention, and rendered a judgment against it upon the cross-petition for $250. To review this judgment Anderson and the Newport Savings Bank have brought the case to this court by appeal.

The record discloses that on January 15, 1890, the Bank of Ogalalla was duly organized as a corporation under the laws of this state with a capital of $25,000, for the purpose of transacting a general banking business at Ogalalla, Nebraska. On that day it commenced business, succeeding to the business of the First National Bank of Ogalalla, whose assets it received, and whose liabilities it assumed. The officers and stockholders of these two institutions were the same persons, and, no doubt, the change was made so that its capital could be reduced, and its business conducted under the supervision of the state, rather than the federal authority. On February 14, 1891, the stockholders of said bank amended the articles of incorporation by changing the amount of its capital stock from $25,000 to $12,500, and passed a resolution authorizing its board of directors to call in the outstanding stock, and issue new shares to the several stockholders for one-half of their holdings, and to make such provision for the payment of the amounts due to the stockholders by reason of the reduction of the stock as, in its judgment, funds could be collected without material injury to the business of the bank. Pursuant to this resolution, the board on the same day reduced the capital of said bank from $25,000 to $12,-500, and caused to be issued to each shareholder stock to the amount of 50 per cent. of his original holdings, and for the remaining 50 per cent. issued to each stockholder certificates of deposit, payable on or before one year, with interest at 5 per cent. These certificates of deposit were carried upon the books of the bank as a liability the same as any other deposit, and when so considered, the indebtedness of the bank, excluding its liability on account of its capital stock, was $27,042. At that time the book value

of its assets was $39,542, although the actual value of
the assets was considerably less, being approximately
$21,400. The intervener Anderson was a stockholder and
vice-president of the bank at the time of the reduction of
the capital stock, and received in settlement of his *pro rata*
of the reduced stock a certificate of deposit for $2,625,
payable one year from date with interest at 5 per cent.
There was paid to Anderson from time to time upon this
certificate the amounts as shown by the following table:

| | |
|---|---:|
| Jan. 21, 1892 | $131 25 |
| June 2, 1893 | 667 95 |
| Mar. 15, 1893 | 131 24 |
| Mar. 10, 1894 | 32 81 |
| Mar. 12, 1894 | 32 81 |
| Feb. 18, 1895 | 689 40 |
| Oct. 3, 1895 | 409 99 |
| Nov. 7, 1895 | 100 50 |
| Dec. 6, 1895 | 101 00 |

Making a total of.......$2,296 95

From this table it appears that the total sum paid to
Anderson was $2,296.95. The trial court found that the
amount paid to him was $2,170.40, of which amount
$656.25 was simply surrendered by Anderson under what
was called an "assessment," on which he received no
money. We are unable to see how the court arrived at
the amount of the judgment from any of the figures given
in the finding, neither are we able to find any proof that
$656.25 of the amount paid to Anderson was a simple
credit upon an "assessment." The record shows that An-
derson paid his "assessment" of $656.25 by a check dated
November 7, 1893, and that this check was paid out of
Anderson's deposit in the bank. The record also shows
that Anderson continued to be an officer and stockholder
of the bank, although he took no active part in its man-
agement until March 10, 1894, at which time he sold his
stock and severed his connection with the bank. From
the foregoing facts it appears that at the time of the re-

duction of the capital stock the interest of the stockholders in the bank was approximately $5,800. This is all there would have been left to divide among them had the outside creditors been paid. As against this interest, it issued stock to its several stockholders to the amount of $12,500, which more than consumed the interest of the shareholders in the bank, and in addition thereto issued to its members certificates of deposit for $12,500. Manifestly there was no consideration for the issuance of these certificates of deposit. The bank could not create a valid indebtedness against itself by the issuance of certificates of deposit based upon fictitious claims. Had the capital stock of the bank been unimpaired at the time of the reduction, undoubtedly its capital could have been reduced in the manner in which it was sought to be done in this case, and the certificates of deposit would have been valid claims against the bank. The record, however, shows there was nothing but a deficit to divide among its shareholders at the time the certificates of deposit were issued, and consequently they were not based upon any consideration, and the payment of them was a fraud upon other creditors of the bank.

The rule is now well settled by the weight of authority that the capital stock of a corporation is a trust fund for the benefit of creditors, in the sense that there can be no distribution of its capital among the stockholders without provision being first made for the payment of corporate debts; and the courts will be astute to detect and defeat any scheme or device which is calculated to withdraw the fund, or in any way place it beyond the reach of creditors. *Corey v. Wadsworth*, 99 Ala., 68; *Hollins v. Brierfield Coal & Iron Co.*, 150 U. S., 371; *Hospes v. Northwestern Mfg. & Car Co.*, 48 Minn., 174; *Buck v. Ross*, 68 Conn., 29. These certificates of deposit to Anderson being issued without consideration, he had no action against the receiver and no right to participate in the dividends.

It remains to be determined whether the receiver had a claim against Anderson, as found by the trial court. If

the receiver had any such action, it arises by reason of payments upon these certificates of deposit by the wrongful procurement of the payee, for which he would be liable to make restitution as for money had and received. It would seem that anyone who could show a legal interest in this money, and had the right to proceed in the bank's name or in its behalf, could have sued to recover at any time after it was paid, and that therefore the statute of limitations would begin to run as against such action, from the time of payment. The cross-petition was filed December 13, 1893, so that all payments made prior to December 13, 1893, would be barred by the statute of limitations. The payments made to Anderson which were not barred by the statute of limitations amount to $1,366.51, which, together with interest from the date of payment to the date of the judgment, amount to $1.657.26.

We now turn our attention to the facts relating to the certificates of deposit held by the Newport Savings Bank. It appears that in July, 1888, Hamer and Lewis, for a valuable consideration, executed and delivered to the Newport Savings Bank their promissory note for $5,000, due and payable July 15, 1891. At the time of the delivery of the note there was also delivered to the Newport Savings Bank, as collateral security for the debt, twenty shares of stock held by Hamer and Lewis in the First National Bank of Ogalalla, and also other stock not necessary to be considered here. In 1890, the Newport Savings Bank, with the approval of Hamer and Lewis, surrendered the shares of stock in the First National Bank held by it as collateral, and in lieu thereof received a like number of shares of stock in the Bank of Ogalalla. In 1891, when the further reduction of capital stock was made in the Bank of Ogalalla, the savings bank, under the direction of Hamer and Lewis, surrendered the twenty shares of stock in the Bank of Ogalalla, and in lieu thereof received ten shares of the capital stock, and four certificates of deposit for $250 each. It is clear that the Newport Savings Bank was a party to this last reduction of stock, as well as to

the first. One of these certificates was surrendered by the Newport Savings Bank in payment of an "assessment" upon the stock. One of them was paid to the intervener bank on February 20, 1893. The two remaining certificates form the basis of the claim now sought to be enforced in behalf of the intervener bank. The shares of stock and the certificates above mentioned were issued in favor of Hamer and Lewis, and by them indorsed to the Newport Savings Bank. It appears in the record that the indebtedness, for which the certificates were held as collateral security, had not been entirely liquidated, and amounted to considerably more than the amount of the certificates. The cross-petition of the receiver to recover the amount of the payment made February 20, 1893, was filed December 13, 1897, so that the statute of limitations, which was one of the defenses urged, had run against the right of action at the time of filing the cross-petition. The court was therefore wrong in entering judgment against the Newport Savings Bank on account of money received by it in payment of the certificate. It only remains to be determined whether the claims of the intervener bank, based upon these certificates of deposit, should be allowed, and the bank permitted to participate in the dividends along with the general creditors.

These certificates in the hands of Hamer and Lewis, to whom they were originally issued, would not be valid claims against the bank for the reason that there was no consideration for their issuance. In this respect they stand upon the same footing as the certificate issued to Anderson. Unless the intervener bank is held to be an innocent holder for value, it can have no greater rights to participate in the dividends than Hamer and Lewis would have had. The testimony shows that the Newport Savings Bank knew the purpose of the changes in the capital stock of the First National Bank and of the State Bank organized in its place. There was no consideration for the transfer of the certificates to the intervener bank other than the original loan of 1888, and at the time of their

delivery the note was, by its terms, long past due. It appears that the reduction of the stock was made February 1, 1891, while the certificates bear date December 14, 1892. We do not think that the transfer of these certificates constituted the Newport Savings Bank a bona-fide holder for value, or gave to it any more right to recover against the Bank of Ogalalla than Hamer and Lewis would have had. By holding the stock in the bank as collateral security, the intervener bank was entitled to participate in any surplus in the assets of the bank after the debts were paid, and by an exchange of the stock for these certificates it obtained no greater rights.

From what has been said it follows that the judgment of the district court was wrong. We therefore recommend that the judgment be reversed, with directions to enter a judgment dismissing the petition of intervention filed by Anderson, and that a judgment be entered against him upon the answer and cross-petition of receiver for $1,513.65; that the answer and cross-petition of the receiver against the Newport Savings Bank be dismissed, and that the claim of the Newport Savings Bank upon the two certificates be also dismissed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, with directions to enter judgment in accordance with this opinion.

REVERSED.

July 22, 1902, the foregoing opinion was modified as follows:

DAY, C.

Our attention is directed to an apparent error in the opinion of this court in this case, wherein it is recommended that a judgment be entered against intervener Anderson, upon the answer and cross-petition of the re-

ceiver, for $1,513.65. To the end that justice may be done, and that the judgment may conform to the opinion, the recommendation of the former opinion beginning with the words "We therefore recommend," is modified, so that the said recommendation shall read as follows:

"We therefore recommend that the judgment be reversed with directions to enter a judgment dismissing the petition of intervention filed by Anderson and that a judgment be entered against him upon the answer and cross-petition of the receiver upon the items not barred by the statute of limitations, to wit: March 10, 1894, $32.81; March 12, 1894, $32.81; February 18, 1895, $689.40; October 3, 1895, $409.99; November 7, 1895, $100.50; December 6, 1895, $101.00, together with interest upon the respective amounts from the date of the several payments; that the answer and cross-petition of the receiver against the Newport Savings Bank be dismissed; and that the claim of the Newport Savings Bank upon the two certificates be also dismissed."

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of this court is modified, as herein recommended, and the district court is directed to enter judgment in accordance with the opinion of this court as thus modified.

JUDGMENT ACCORDINGLY.

NOTE.—*Bank Deposits.—Certificate of Deposit.—Limitation of Action.*— A claim for deposit in a bank can not be barred by the statute of limitations. *Green v. Odd Fellows' Bank,* 65 Cal., 71. The pass-book is evidence of indebtedness in writing and the action is governed by the provisions applicable thereto. *Schalucky v. Field,* 124 Ill., 617. A pass-book is not a written contract, but a receipt. *Talcott v. First Nat. Bank,* 53 Kan., 480. The monthly balance struck is an account stated and the statute begins to run from the time of the statement. *Union Bank v. Knapp,* 3 Pick. [Mass.], 96; *In re Pennsylvania Bank,* 152 Pa., 65. The statute begins to run from the date of the deposit. *Locke v. First Nat. Bank,* 65 N. H., 670.—W. F. B.