# City Bank & Trust Co. *v.* Leonard.

*Petition to be Allowed to Take Charge of Trust Property.*

(Decided June 7, 1910. Rehearing denied June 30, 1910. 53 South. 71.)

1. *Corporations; Insolvent; Trust Fund; Rights of Parties In.*— Where a corporation has been declared insolvent and the final decree has been entered declaring its insolvency and adjudging that its assets were a trust fund for its creditors, and appointing a receiver to administer the same, a mortgagee not a party to the proceedings could not procure an order, on a mere ex parte peti-

[City Bank & Trust Co. v. Leonard.]

tion showing prima facie right to possession under the mortgage, directing the receiver to turn over the mortgaged property in his possession under the final decree, for the reason that the parties to the suit and the other creditors had, after the court had acquired jurisdiction, a right to litigate the mortgagee's claim to the property.

2. *Same.*—Section 3509, while adopting the trust fund doctrine that the assets of an insolvent corporation are a trust fund for the equal benefit of all creditors, applies only to corporations after insolvency, and does not hamper solvent corporations in conveying or mortgaging their property.

3. *Same; Rights of Mortgagees.*—A mortgagee of property of a corporation may intervene in a suit against the corporation seeking a decree adjudging it insolvent and declaring its property to be a trust fund for the creditors, and ask the court to protect its right to the mortgaged property, even after the property was declared to be a trust fund for the benefit of creditors.

4. *Judgment; Power to Vacate; Time.*—The court may annul a decree absolutely void on its face at any time, but cannot at another term of the court, or after the decree has passed beyond its control, set aside a decree merely because it is irregular, erroneous or voidable.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

A certain corporation had been declared, at the suit of its creditors, to be insolvent and a final decree had been rendered adjudging it insolvent, and declaring its assets to be a trust fund for the benefit of creditors, and a receiver has been appointed to take charge of same. Thereafter the City Bank & Trust Company filed its petition setting up that it held a mortgage on the property of said insolvent corporation, and requesting the court to direct the receiver to deliver said property and its income to the mortgagees. From an order denying said petition, petitioner appeals.

A. C. & H. R. HOWZE, and A. LATADY, for appellant. An appeal lies from the order in this case.—*Thornton v. H. A. & B. R. R. Co.*, 94 Ala. 253; *Hovey v. McDonald*. 109 U. S. 153.· After the law day of the mortgage and after the default in payment of the debt, the legal title of the property vests in the mortgagee.—*Welch v.*

*Phillips,* 54 Ala. 309; *Downing v. Blair,* 75 Ala. 216. After the happening of a certain event the mortgagee has three remedies, all of which he may pursue at the same time.—*Duvall v. McClosky,* 1 Ala. 708; *Micou v. Ashurst,* 55 Ala. 607; *Scott v. Ware,* 66 Ala. 183; *Coyle v. Williams,* 67 Ala. 108; *Dodson v. Hurley,* 129 Ala. 380; *Allen v. Pearce,* 50 So. 924. The court of equity never interferes with a mortgagee pursuing his legal remedy. —*Glidden v. Andrews,* 14 Ala. 733; *Williams v. Troy,* 39 Ala. 108. Neither the mortgagor nor the one claiming under him can compel the first mortgagee to foreclose his mortgage, or in any way control his rights in regard thereto.—*Kelly v. Longshore,* 78 Ala. 203; *Wimberly v. Marbury,* 94 Ala. 240; *Threefoot v. Hillman,* 130 Ala. 244. The receiver succeeded only to the right and title which the defendant corporation had in said property which was only the equity of redemption, and the right to pay off the mortgage debt.—*McCullough v. Jones,* 91 Ala. 186; 136 U. S. 89; 2 L. R. A. (N. S.) 1019; 11 Ib. 157; 23 Ib. 174; 34 Cyc. 193; 23 A. & E. Enc. of Law, 1091. In the appointment of a receiver the court will take care not to interfere with the rights of parties having prior estates.—2 Dan. Ch. Pr. 1715. The property being in the possession of the court, the proper proceedings would be to ask the court for its possession.—*Talladega Merc. v. Jenifer,* 102 Ala. 259; *Southern G. Co. v. Wadsworth,* 115 Ala. 570. The court cannot interpolate anything into the statute beyond its actual words.—*Brown v. French,* 49 So. 255. The court should have granted the prayer of the mortgagee.—*Talladega M. Co. v. Jenifer Co., supra; Sullivan T. Co. v. Bloch,* 48 So. 876. The appointment of a receiver was void because the complainant was not required to give bond. —Sec. 5728, Code 1907; *Water Co. v. Weatherly,* 108 Ala. 412; *Drayspring v. Loeb,* 113 Ala. 262; *David v.*

[City Bank & Trust Co. v. Leonard.]

*Levy*, 119 Ala. 241. If not entitled to appeal from the order petitioner is clearly entitled to the alternate writ of mandamus commanding the judge to vacate the order as asked for in the motion submitted with this appeal. —*Ex parte Hill*, 51 South. 786; *Brazzell v. New South Co.*, 131 Ala. 416; *Wilson v. Duncan*, 114 Ala. 659; *Bridgeport E. & I. Co. v. B. L. & I. Co.*, 104 Ala. 276; *Ex parte Tower & Co.*, 103 Ala.

EDMUND H. DRYER, PALMER P. DAUGETTE, and SPEER WHITTAKER, for appellee. Section 3509, Code 1907, does not lay out a scheme for marshalling of assets and administration in such cases, and the court in its final decree followed the rule of procedure in such cases. —*Louisville Mfg. Co. v. Brown*, 101 Ala. 272; *Taber v. Royal I. Co.*, 124 Ala. 689. Until the mortgagee makes an effort to seize the property and intercept the rents, the property was that of the mortgagor.—70 Ala. 219. The court will not permit the property to leave its custody until the cost and expenses of administration have been paid.—*Beckwith v. Carroll*, 56 Ala. 12; *Thornton v. H. A. & B. R. R. Co.*, 94 Ala. 353. There can be but one administration of a trust fund.—*Taber v. Royal I. Co., supra.* In all cases where a corporation becomes insolvent and its assets must be distributed the statutory scheme made for the purpose is exclusive of all other remedies and no creditor can complain.—*Nelson v. Hubbard*, 96 Ala. 248; and authorities supra. Section 5728, Code 1907, relates only to appointments of receiver before final decree.—*David v. Levy*, 119 Ala. 241. The statute gives the court jurisdiction to declare, and it has decreed the assets of the corporation to be a trust fund, and everything necessary to make it effectual or requisite to attain the end intended is implied.—*In re*

*Merlett,* 71 Ala. 371; *Ex parte Lusk,* 82 Ala. 526; *U. S. v. Johnson,* 6 Wall. 166; 34 Cyc. 70; 23 A. & E. Enc. of Law, 1016.

MAYFIELD, J.—The K-S Lumber Company filed a bill against the Grand United Order of Galileean Fishermen, an insolvent corporation, seeking to have the funds of the respondent declared a trust fund, and to have them marshaled and administered, as such, among its creditors. The cause proceeded to a final decree, and the respondent corporation was duly decreed to be insolvent, and its assets were decreed to be a trust fund to be administered for the benefit of the creditors. For the purpose of administering the trust after the decree, the court appointed C. E. Leonard receiver, to take possession and control of the property and to preserve it, and to administer the trust.

The property of the corporation included a large farm in Macon county, which was taken possession of by the receiver, and rented out by him as such receiver, for the year 1910; which act, among others, was reported to and confirmed by the court. After this farm was rented for the year 1910, the appellant filed its petition in the court which was administering the trust, alleging, among other things, that "it is the owner as liquidator and trustee of the Alabama Trust & Savings Company of a first mortgage, and the debt secured thereby executed by the defendant in said cause on the * *. * described lands, which has been taken possession of and is now held by the receiver," etc. "That the said mortgagor has failed to comply with the terms of said mortgage by paying the indebtedness secured thereby as therein provided, and said mortgage is now in default, and said City Bank & Trust Company is proceeding to

foreclose the same. Said City Bank & Trust Company therefore hereby makes application for the possession of said land, and asks the court to direct said receiver to turn over the same to it, together with such income as may be received by him for the use and occupation thereof."

The receiver objected to the granting of the petition, and moved the court to refuse to grant, and to disallow, the same, upon the following, among other grounds : "It does not appear therefrom that the said City Bank & Trust Company has such an interest in the subject-matter of said application as that said application should at its instance alone be granted. Said application seeks collaterally to assail the said decree of December 20, 1909. Said application if granted would have the effect to that extent of vacating the said decree of December 20, 1909. This court at the time of the filing of said application had lost control over its said decree of December 20, 1909, so far as the said decree according to its terms affects the object of the said application. It would be improvident at this time for the court to grant said application, even if it have the power to do so. Under said decree of December 20, 1909, adequate provision is made to have the interest of said City Bank & Trust Company ascertained and its rights protected, and it is given full opportunity and means thereby and thereunder to · prove and have its claims allowed and to resist the claims of any or all of the creditors of said Grand United Order of Galileean Fishermen. The applicant in said application has a full and adequate remedy by intervening in this suit and asserting its claims by such intervention."

On February 9, 1910, the petition came on for a hearing, and, after hearing, the court entered up a decree denying the petition, which decree was in substance as

follows: That "they (the said petition together with another) are separately and severally overruled and dismissed without prejudice to the presentation of any claims said petitioners may have under the provisions of the final decree in this cause or in other manner to this court. It is further ordered, adjudged, and decreed that petitioners respectively pay the costs incurred upon said petitions, for which execution may issue. February 10th, 1910." From this decree the bank, the petitioner, appeals; and if mistaken in the remedy by appeal, it then applies to this court for an alternative mandamus, commanding the chancellor to set aside and vacate the order or decree by which he denied or dismissed its petition.

It is insisted by the appellant that the chancery court should have granted its petition, and ordered the receiver to deliver the possession of the land to the petitioner as the mortgagee thereof; that the law day of the mortgage having arrived, and default having been made as to the payment of the debt secured by the mortgage, it, as the assignee of the mortgage, was entitled to the possession, and that the possession of the receiver was wrongful as against it. The bank further sought to have the receiver pay it for the use and occupation of the land. It may be that, if the matters set forth in appellant's petition are true, its right and title to the land in question are prior and paramount to those of either the receiver, the mortgagor, or its creditors. But the chancellor could not and should not have determined that those matters were true, on the mere ex parte petition or application of petitioner, who was a stranger to the main suit, and who did not even request to be made a party to the suit and to be allowed to contest his claims and rights to the property, the subject-matter of the suit, litigated and adjudicated by the final

decree of the court which had assumed jurisdiction for
the very purpose of determining the equitable rights of
all claimants to the property. The effect of granting
the petition would have been that the court accepted the
ex parte showing of the bank as true, and conclusive of
the rights of all other litigants to the property. At
best, the showing made by the petition was only prima
facie true. The parties to the suit and other creditors
certainly had the right, after the court had acquired
jurisdiction, to litigate the claims as to the property.

Another effect of granting the petition would have
been to annul, or at least modify, a former decree of the
court, after it had probably passed from the jurisdic-
tion of the chancellor rendering it; and this being true,
the chancellor of course had no power to grant the ap-
plication. If a decree is absolutely void, of course the
chancellor can at any time after its rendition, so de-
clare it, and annul or set it aside, because so void on its
face; but he cannot do so at another term of the court
or after the decree has passed beyond the control of the
court, merely because it was erroneous, irregular, or
voidable. If the petitioner was not a party to the suit
or decree, of course it was not binding upon
it personally, no matter whether valid or voidable; nor
could the decree conclude its rights to the land, if it
was not a party or privy to the suit or decree. While the
petitioner could have intervened and had its rights to
the property adjudicated by the court, it did not seek
to do this, but only sought to have the court deliver it
the property, the subject-matter of the suit, upon its
petition, and thus to defeat entirely the object of the
suit and all the rights or claims of the litigants to the
property being administered by the court.

We cannot agree with appellee as to the effect of sec-
tion 3509 of the Code of 1907. This section reads as fol-

lows: "Sec. 3509. Marshaling Assets of Insolvent Cor-
porations.—The assets of insolvent corporations consti-
tute a trust fund for the payment of the creditors of
such corporations, which may be marshaled and admin-
istered in courts of equity in this state." It is contend-
ed by appellee that the effect of the statute is that it
must be construed as if written into all mortgages ex-
ecuted by all corporations, whether solvent or insolvent
at the time the mortgage is executed. To use the exact
language of appellee's counsel, the mortgage in question
should be construed as if it read: "Should this mortga-
gor corporation become insolvent, it is agreed between
the parties hereto that the property herein described
with the other assets of said corporation shall consti-
tute a trust fund for the payment of the creditors of said
corporation, and that the same may be marshaled and
administered by a court of equity in this state." This
we do not think to be the effect of this statute, or the
intention of the Legislature which enacted it. The stat-
ute was only intended to settle what had theretofore
been a disputed question as to the common law of this
state upon that subject. The question was, however,
settled in the case of *O'Bear Jewelry Co. v. Volfer & Co.*,
106 Ala. 205, 17 South. 525, 28 L. R. A. 707, 54 Am.
St. Rep. 31, and settled to the effect that the assets of an
insolvent corporation were not a trust fund; but it was
intimated in that opinion that the converse should be
the law, though the Legislature only could so make it.
And the statute was probably enacted upon the faith
and strength of that decision, and to accomplish the
ends and for the purposes sought in that suit, which
could not be attained for the lack of such statute. How-
ever, theretofore there had been numerous decisions of
this and other courts holding that the funds of an insol-
vent corporation were a trust fund to be administered
for the benefit of its creditors.

[City Bank & Trust Co. v. Leonard.]

This court, from an early date, without the aid of a statute, held that the assets of an insolvent corporation were a trust fund for the equal benefit of all its creditors. In a bill to reach the assets of an insolvent bank (*St. Mary's Bank v. John, Powers & Co.*, 25 Ala. 612) this court in 1854 said: "The capital stock of the bank with all its property and assets, is to be regarded as a trust fund for the payment of creditors; and the stockholders, directors, and agents of the bank are trustees for their benefit, and as such may be made to discover and account in chancery."

In the case of *Corey v. Wadsworth*, 99 Ala. 77, 11 South. 353 (23 L. R. A. 618, 42 Am. St. Rep. 29) Chief Justice Stone reviewed many authorities, and quoted at length from many, and concluded in that opinion as follows: "The question we have been considering is one of grave and growing importance in this state, and we have, therefore, felt it our duty to collate the authorities. It will be seen that the modern authorities, almost without exception, utter the same strong condemnatory language of any and all attempts by directors of an insolvent corporation to have themselves indemnified and preferred, over the other creditors of the company. The assets are, in a sense, a trust fund in their hands for the payment of the corporation's debts, and it is both their moral and legal duty to maintain perfect equality in their administration and disbursement; at least to the extent that they can not prefer themselves. We need go no farther in this case. In looking into the authorities, it will be seen that the right of the directors of an insolvent corporation to prefer themselves as creditors, is withheld from them, not alone on the ground that the assets are a trust fund, of which they are trustees for the creditors."

In the case of *Goodyear Rubber Co. v. Scott,* 96 Ala. 439-441, 11 South. 371, which was decided after *Corey v. Wadsworth* though reported earlier, the same learned Chief Justice said: "In *Corey v. Wadsworth* (99 Ala. 68, 11 South. 350, 23 L. R. A. 618, 42 Am. St. Rep. 29), we cited and collated many authorities, and reached the following conclusions: That the capital stock and assets of an insolvent corporation are, in a sense, a trust fund, of which the governing board are trustees for the benefit of the creditors, and that such governing board cannot convey or assign such corporate assets in such manner as to secure to themselves, or to any member of their board, as a creditor of the insolvent corporation, a preference over the other creditors. This principle rests not alone on the fact that the assets are a trust fund, of which they are the trustees. It is largely supported by the undue advantage the knowledge they necessarily have of the corporation's embarrassments will secure to them over outside creditors, and by the fact that in paying or securing themselves no antagonistic interest is represented. They deal with themselves, and are thus both seller and buyer. Transactions of this kind by any one filling a fiduciary relation are voidable, if seasonably objected to by the beneficiary. We did not, however, go to the length of holding that directors of an insolvent corporation are so completely hampered by the trust relation they sustain as to disable them from paying or securing some creditors, in preference to and at the expense of others to whom the corporation is indebted. The trust element of the relation they sustain to the assets, considered alone, points in this direction; and perhaps it would be the sounder policy if such were the rule. The very great weight of the authorities, however, is the other way, and we are not inclined to run counter to them," etc.

And in the case of *Gibson v. Trowbridge Co.*, 96 Ala. 360, 11 South. 366, he again said: "In the recent case of *Corey v. Wadsworth* (99 Ala. 68, 11 South. 350, 23 L. R. A. 618, 42 Am. St. Rep. 29), we considered this question so fully that we do not propose to add anything to what is there said. The assets of the insolvent corporation had become so far a trust fund in the hands of the managing body as that by no artifice could a member of the governing board have himself preferred over other creditors of the insolvent corporation."

McClellan, J., dissenting fom this trust-fund doctrine in all these recent cases, and in the *O'Bear Jewelry Case*, 106 Ala. 205, 17 South. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31, wrote what he says was intended as a dissenting opinion on this subject; but was adopted by the court and expressly overruled the earlier cases in point. But in this case it was said: "This whole idea, that the property of insolvent corporations is held by them in trust for creditors—is a trust estate in their hands—and to be administered by chancery as such, originated in a dictum of Judge Story in *Wood v. Dummer*, 3 Mason, 308, Fed. Cas. No. 17,944. It had no existence at common law, and has none to this day in the law of England; but is distinctly a creation of some courts in this country, and is known in jurisdictions where it obtains as the 'American doctrine.' This court has quite recently adopted it, and held in the cases of *Corey v. Wadsworth*, 99 Ala. 68 (11 South. 350, 23 L. R. A. 618, 42 Am. St. Rep. 29), *Goodyear Rubber Co. v. Scott & Co.*, 96 Ala. 439 (11 South. 370), and *Gibson v. Trowbridge Furniture Co.* (96 Ala.) 357 (11 South. 365), that the assets of an insolvent corporation is impressed with a trust in the hands of the company, in favor of its creditors first, and then in favor of its stockholders." The opinion also suggests legislative action

on the subject, by adopting the language of Dillon, J. (*Buell v. Buckingham & Co.*, 16 Iowa, 284, 85 Am. Dec. 516), in which in referring to the trust-fund doctrine, he says: "This condition of the law may constitute a good reason for giving pro rata to outside creditors, but the Legislature must furnish the remedy."

Coleman, J., who concurred in the *O'Bear Jewelry Co. Case,* which overruled the former cases on this subject, said (106 Ala. 229, 17 South. 534 [28 L. R. A. 707, 54 Am. St. Rep. 31]) : "I do not understand the case at bar to overrule any principle of law decided in either of the foregoing cases, which were necessary to a decision of those cases, but that these cases are overruled only so far as the opinion stated that the assets of a corporation became a trust fund for the benefit of creditors, and were placed beyond the power of disposition or control of the governing board, whenever and as soon as the corporation became insolvent, and that the insolvency of the corporation alone gave a court of equity jurisdiction to administer the assets as trust property."

It does not appear whether the other members of the court agreed with Justice Coleman as to this.

The language of the statute (Code 1907, § 3509) is almost identical with that used by this and other courts, when announcing and defining this "American trust-fund doctrine." This being true, we are constrained to hold that the intention of the Legislature, in the passage of this statute, was to restore the law in this state as it was before the decision in the *O'Bear Jewelry Company Case*—this, and nothing more. We have above set out that doctrine and need not here repeat it. Many, if not all of the authorities pro and con this question, are quoted from and reviewed in the two cases above referred to, viz., *Corey v. Wadsworth* and *O'Bear Jewelry Co. v. Volfer.* It was never intended by that trust-

[City Bank & Trust Co. v. Leonard.]

fund doctrine which our statute only adopts to hamper
or embarrass solvent corporations in conveying or mort-
gaging their property, or in making the security of
their creditors conditional upon the corporation's be-
coming insolvent in the future, and thus destroying
their priority of lien. The doctrine only applied to cor-
porations after they became insolvent and ceased to be
going concerns. It did not apply to solvent corpora-
tions nor to those which were going concerns. Chief
Justice Stone, in *Corey v. Wadsworth*, tersely express-
ed the true rule as follows: "At what stage of a cor-
poration's affairs must it be pronounced insolvent, so
as to bring it within the principle we have declared?
It is not enough that its assets are insufficient to meet
all its liabilities, if it be still prosecuting its line of
business, with the prospect and expectation of continu-
ing to do so. In other words, if it be, in good faith, what
is sometimes called a 'going' business or establishment.
Many successful corporate enterprises, it is believed,
have passed through crises, when their property and
effects, if brought to present sale, would not have dis-
charged all their liabilities in full. We feel safe in de-
claring that when a corporation's assets are insufficient
for the payment of its debts, and it has ceased to do
business, or has taken, or is in the act of taking, a step
which will practically incapacitate it for conducting the
corporate enterprise with reasonable prospect of suc-
cess, or its embarrassments are such that early sus-
pension and failure must ensue, then such corporation
must be pronounced insolvent."

We do not doubt the right of the bank, in this case,
to intervene and to have the court declare and deter-
mine, and protect, its right to the property, the subject-
matter of this suit, even after it has been declared to be
a trust fund for the benefit of the creditors of the cor-

poration. Nor do we mean to intimate that its failure to intervene and litigate its rights would conclude its rights as to priority of lien or possession, to the lands, if it is not made a party. But we do not think that the court erred in declining to deliver the possession to it, on its mere ex parte motion, after decree rendered which put the receiver in possession. So far as the court could know or determine, on this motion, it might have been mistaken as to the validity or priority of its claim; or the claim might have been fraudulent or feigned. It did not ask to have its claims as between it and the other claimants there litigated, but sought only to have the court deliver the possession and control of the property to it upon its voluntary showing and claim.

It had a right to have itself made a party, and to have the question determined—but this it did not request or seek. It essayed simply to obtain possession and control of the property, and to have the receiver required to pay it as for the use and occupation thereof, without litigating with the other creditors and claimants its rights thereto.

Mr. Jones, in his work on Mortgages (section 1439), as to necessary and proper parties, says: "Persons having interests in the property paramount to the mortgage sought to be foreclosed are generally neither necessary nor proper parties to the suit, because the only proper object of the proceedings is to bar all rights subsequent to the mortgage. The decree can have no effect upon the rights of the parties having priority, whether they are made parties to the action or not. In some cases prior mortgagees are made parties to the bill, so that the court may with their consent order a sale of the whole estate, and thus make a good and complete title in the purchaser. Sometimes a prior

mortgagee is made a party to the suit, with a view to his assenting to a decree for the sale of the whole estate, in which case his mortgage is first paid, and the proceeds then applied to the second mortgage. In such case the legal presumption is that a purchaser at a foreclosure sale gives the full value of the property; and the whole proceeds of the property are then applied to the payment of the incumbrances in the order of their priorities. But it is proper to make the person who holds the prior legal title a party only when his debt is payable, and he is willing to receive payment, and for the purpose of making a sale of the whole title. He is not a necessary party except for such a decree. The court may order a sale subject to a prior incumbrance; and unless the mortgagee with paramount title expressly consents to a sale of the mortgaged estate, the sale must be made subject to his mortgage; and no portion of the proceeds of the sale can be applied in payment thereof."

So, in this case, if the claim of the petitioner is true, and it is not a party to the proceeding, it will not be bound or concluded by the decrees to which it is not a party. Petitioner in this case did not pursue or offer to pursue the course pointed out in the text, but desired only that the property be delivered to him on his petition, and that the suit between the other parties be ended. The proper practice and rules as to the right of third parties to intervene in pending suits like this have been several times stated, and the authorities both as to text-books and adjudicated cases reviewed, by this court. Some of these rules are as follows:

" 'Where there is no privity, a stranger interested in the subject-matter or objects of a suit must bring forward his claim by an original bill in the nature of a supplemental bill, or in the nature of a cross-bill, as the

case may be, so that those interested adversely may have process, with a copy of the bill, served on them, and may have an opportunity to avail themselves of the regular modes of defense against such bill; and even where a third person claims under or in privity with one of the parties litigant, his interest can only be brought before the court by bill. It cannot be done by petition.—*Foster v. Deacon*, 6 Madd. 59; *Carow v. Mowatt*, 1 Edw. Ch. (N. Y.) 9.' "

"Intervention by petition may be allowed when the purpose of the petitioner is to assert his interest and right to share in a fund which is in the custody of, and being administered by the court. Manifestly, this is not the purpose of the petitioners in the case at bar. They do not seek to share in the fund which will be brought into court as result of the proceeding to which they ask to be made parties, but, on the contrary, their avowed purpose is to defeat the only action of the court which could produce a fund to be administered and distributed.—*Carlin v. Jones*, 55 Ala. 630."

" 'When a person, not a party to a pending suit, between whom and the complainant there is no privity, but who has a claim or lien on the property, or is interested in the subject-matter of the suit, desires for his own protection to present his new claim, to assert his independent right, and raise new issues, he must do so by a formal bill, containing appropriate allegations —an original bill in the nature of a cross-bill, or of a supplemental bill, as the case may be.'—*Renfroe v. Goetter*, 78 Ala. 314; *Cowles v. Ledyard*, 39 Ala. 130." *Ex parte Printup and Ex parte Elliott*, 87 Ala. 151, 152, 153, 6 South. 419.

It is quite evident that the petitioner did not meet the requirements or come within the provisions of any of these rules, and the chancellor properly disallowed his petition.

[City Bank & Trust Co. v. Leonard.]

What was said in the case of *Ex parte Branch*, 53 Ala. 150, may not be inappropriate here: "It is possible, perhaps, that if the petitioners had set forth that they were advised and insisted that upon the pleadings and evidence in the cause before the chancellor the decree therein was erroneous and would be reversed on appeal, and had shown that they had such an interest in the subject-matter that they ought to have been made parties to the cause at the beginning, and had prayed that they might now be made parties to enable them to seek redress by appeal to this court to have the decree reversed—a case might have been made in which the prayer should have been granted. We do not now decide, however, that this would be so. The cases of *Watson and Wife v. May*, 8 Ala.177, *Lees v. Brownings*, 15 Ala. 495, and *Boykin v. Kernochan*, 24 Ala. 699, seem to indicate that the power in question might, to that extent, and under such a state of facts, be properly exercised. Such was not the case made by the petition presented to the chancellor, or, of course, that which is brought before us."

All that we decide in this case is that the chancellor did not err in denying the petition.

Affirmed.

SIMPSON, ANDERSON, and SAYRE, JJ., concur in the conclusion.