(77 South. 31)

STANDARD CHEMICAL & OIL CO. v. FAIRCLOTH. (4 Div. 729.)

(Supreme Court of Alabama. Nov. 15, 1917.)

1. INJUNCTION ⊂=27—ENJOINING GARNISHMENT SUITS—DISSOLUTION OF CORPORATION.
Where bill was brought to wind up a corporation, and, while it was pending, and the receiver conducting the company's affairs, another company had garnishments issued upon a judgment against the insolvent company, the first complainant was not entitled to enjoin the garnishment suits, there being no tangible property which could be delivered to the receiver, and preserved or applied to the trust for complainant, the commercial assets of the insolvent corporation being mere choses in action.

2. INJUNCTION ⊂=1—MATTER OF RIGHT—DISCRETION OF COURT.
Writ of injunction is not ex debito justitiæ for any injury threatened or done to the estate or rights of a person, but the granting of it must always rest in sound discretion, governed by the nature of the case.

3. INJUNCTION ⊂=23—CONVENIENCE AND INCONVENIENCE OF WRIT.
In granting or withholding writ of injunction, the court weighs the conveniences and inconveniences in the first instance, and, when very great injury will result to an unoffending party, often leaves the parties to their remedies at law.

4. CORPORATIONS ⊂=566(1)—NOTICE OF INSOLVENCY—CREDITOR AND MANAGING OFFICERS.
A creditor of a corporation is not as a matter of law chargeable with notice of the insol-

vency of the company with which he deals, though the managing officers of a corporation who become creditors of it as such might be charged with such notice.

5. CORPORATIONS ☞547(1) — INSOLVENCY — MANAGEMENT OF ASSETS — SUBJECTION TO EXECUTION AND LIENS—"INSOLVENT."

Under Code 1907, § 3509, providing that the assets of insolvent corporations constitute a trust fund for creditors, which may be marshaled and administered in courts of equity, the mere fact that a corporation becomes "insolvent," that is, unable at the particular time promptly to pay its debts, does not instantly withdraw all its assets from its management and control, so that they are no longer subject to execution or attachment, or the acquisition of liens paramount to the claims of other creditors, if the assets are thereafter marshaled and distributed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvent.]

6. CORPORATIONS ☞566(1) — INSOLVENCY — PURCHASER OR CREDITOR AFTER INSOLVENCY.

Insolvency of a corporation, under Code 1907, § 3509, merely authorizes marshaling of its assets in equity, and, if parties with knowledge of the facts after insolvency attempt to acquire a preference or priority of liens, the court will intervene to prevent them, but the same rule does not apply to a creditor or purchaser of the company's property without knowledge or notice of insolvency, or that the funds or property purchased or subjected to his debt were trust property, his rights acquired by a bona fide purchase by virtue of an attachment or garnishment being paramount to any rights of the other creditors, though the company was insolvent when the sale was made or attachment levied; there must be an intent or attempt to acquire a preference or priority as to trust property before a court of equity will annul or set aside sales or attachment proceedings had in good faith without knowledge or notice of the trust relation.

Appeal from Circuit Court, Henry County; H. A. Pearce, Judge.

In equity. Bill by J. R. Faircloth against the Farmers' Guano Company for a receiver. While the bill was pending, and the receiver managing the company, the Standard Chemical & Oil Company had garnishments issued on judgment formerly obtained against respondent company, and they were pending, whereupon the original bill was amended to enjoin such suits, and to enlarge the powers of the receiver. Demurrers were sustained to the amended bill, and it was again amended, and the demurrers overruled, and the Standard Chemical & Oil Company appeals. Reversed, rendered, and remanded.

John H. Wilkerson, of Troy, for appellant. A. E. Pace, of Dothan, for appellee.

MAYFIELD, J. Appellant corporation obtained a judgment against the Farmers' Guano Company, another corporation, and on this judgment the plaintiff instituted garnishment suits against several alleged debtors of the defendant corporation. Pending these garnishment suits in the circuit court of Henry county, a bill was filed in the chancery court of Henry county to wind up the business and distribute the assets of the defend-ant corporation under and by virtue of section 3512 of the Code; alleging that it was then insolvent, and had ceased to be a going concern, and sought to have the assets declared a trust fund, for the benefit of all the creditors of the insolvent corporation. To this end a receiver was appointed to take charge of the assets, and, in order to do complete justice and equity, the prosecution of the garnishment suits by appellant on its judgment against several alleged debtors of the defendant corporation, were sought to be enjoined. A demurrer by the appellant to the original bill was interposed, and was sustained by the chancellor, on the ground that the bill did not allege that the defendant corporation was insolvent when appellant obtained its judgment and when the garnishment proceedings were instituted. The bill was thereafter amended by alleging insolvency at and before the time of obtaining judgment and the issuing of garnishments; and to the amended bill the chancellor overruled the appellant's demurrer, holding that the bill for injunction against the prosecution of these garnishment suits contained equity, and that the injunction should issue as prayed. From this decree on demurrer appellant prosecutes this appeal.

[1] The chancellor relied upon the decision of this court in the case of Gay-Hardie Co. v. Strickland, 112 Ala. 567, 20 South. 919, in holding that the garnishment suits should be enjoined. If the rules of law and of practice announced in that case apply to the case in hand, the chancellor was right, and his decree must be affirmed; if they do not so apply, the decree appealed from is erroneous, and must be reversed. In the case relied upon, the bill alleged that one Strickland, who was insolvent, conveyed substantially all his property to his wife in payment of a pre-existing debt due her, and that the conveyance was, therefore, a general assignment for the benefit of all the grantor's creditors, and that his wife was, therefore, a trustee of the property so conveyed, for the common benefit of all of the grantor's creditors, by virtue of our statutes as to general assignments and fraudulent conveyances. The bill in that case, as in this, had a receiver appointed to take charge of all the property conveyed, to be administered as a trust fund. Like the bill in this case, it alleged that other creditors of the debtor and grantor had brought attachment suits against the debtor and grantor, and that the writs were levied upon a portion, or portions, of the property so conveyed, and that the wife, the grantee in the alleged general assignment, had claimed the property, and instituted claim suits therefor, after giving forthcoming bond therefor. In that case the court held that the attachment suits and claim suits were properly enjoined, pending the bill to declare the conveyance a general assignment and the administration of the trust. In that case there was tangible property which was conveyed

to a trustee, and which it was necessary to preserve in order to administer the trust, and the property could be delivered to the receiver for preservation and application to the trust. Here there is no tangible property which can be delivered to the receiver and preserved, or applied to the trust. The commercial assets of the insolvent corporation are mere choses in action, as for which suit is brought and is pending. To enjoin these suits would not transfer to the receiver any property to preserve. At best he could only bring suit thereon, as appellant has already done. The garnishees could, and doubtless would, plead to the receiver's suits, the pending suits in garnishment, although the prosecution thereof is enjoined pending this suit in chancery. In other words, the bill does not show that the receiver could collect these debts otherwise than by actions against the garnishees and, of course, that could not be done while the suits enjoined are pending. If appellant had obtained judgments, and the bill with proper averments sought to enjoin the collection thereof, on the ground that the proceeds thereof were, or would be, a part of the trust fund to be administered, or if it sought merely to apportion the assets so collected among all the creditors of the insolvent corporation, or to hold appellant to account for the part which would go to other creditors, the case would be quite different.

[2] The writ "is not ex debito justitiæ for any injury threatened or done to the estate or rights of a person; but the granting [of] it must always rest in sound discretion, governed by the nature of the case." Enfield Toll Bridge Co. v. Connecticut River Co., 7 Conn. 50. As is said in another case, "Injunction is not of right but of grace, and to move an upright chancellor to interpose this strongest arm of the law he must have not a sham case but a well-grounded complaint, the bona fides of which is unquestioned, or capable of vindication, if questioned." Sparhawk v. Union Passenger Railway Co., 54 Pa. 454. "There is no power the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, or is more dangerous in a doubtful case than the issuing of an injunction. It is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages." Baldwin, 218. The court looks beyond the actual injury to contemplate the consequences, and, however palpable may be the wrong, it will still balance the inconveniences of awarding or denying the writ, and adjudge as these may incline the judicial mind.

[3] In granting or withholding the writ the court weighs the conveniences and inconveniences in the first instance, and when very great injury will result to an unoffending party by the stern fiat "Thou shalt," or "Thou shalt not," often leaves parties to their remedies at law. Chambers v. Iron Co., 67 Ala.

353; Davis v. Sowell, 77 Ala. 262. The chancery court, on those high principles of justice and morality which are its boast, will always stay its hand when equal and exact justice cannot be done. As above stated, if the injunction be granted, no tangible property will be restored or surrendered to the receiver, only rights to bring actions in law courts as to which actions are already brought, which are enjoined. If the actions be brought by the receiver, the pending garnishment suits still remain, though the prosecution thereof is enjoined, but the injunction cannot be made final until the chancery suit, or its main equity is disposed of. There is no allegation that these garnishment suits were collusive or fraudulent, or were sued out with the intent to obtain a preference in a common trust fund. There is no allegation that the plaintiff had any knowledge or notice of the insolvency of the defendant corporation, or that its assets were then a trust fund in such sense that plaintiff could not subject these choses in action to the satisfaction of his judgment.

[4] A creditor of a corporation is not, as a matter of law, chargeable with notice of the insolvency of the corporation with which he deals. The managing officers of a corporation, who as such become creditors of a corporation, might be so charged with such notice; but not so as to general creditors. It is true that section 3509 of our Code provides that:

"The assets of insolvent corporations constitute a trust fund for the payment of the creditors of such corporations, which may be marshaled and administered in courts of equity in this state."

[5] We are not, however, of the opinion that the mere fact that a corporation becomes insolvent, that is, unable at the particular time to promptly pay its debts, eo instante all of its assets are withdrawn from the management and control of the corporation, and are no longer subject to execution or attachment by its creditors, and that no liens can thereafter be acquired on any of its property, which will be prior or paramount to the claims of all other creditors, if the assets are thereafter marshaled and distributed among the creditors as the statute authorizes.

[6] The insolvency of the corporation merely authorizes the marshaling of the assets by a court of equity, and if parties with knowledge of the facts, after the corporation has become insolvent and its assets become a trust fund, attempt to acquire a preference or priority of liens upon the funds, the court would then intervene, to prevent such parties from thus acquiring such preference, or prior liens; but the same rule would not apply to a creditor or purchaser of the property who had no knowledge or notice of the fact of insolvency, or that the funds or property purchased or subjected to his debt were trust property. If such creditor or pur-

chaser has no knowledge or notice of insolvency, or of the fact that a trust was impressed upon the property, his rights acquired by a bona fide purchase by virtue of an attachment or garnishment as to the property, would be paramount to any rights of the other creditors of the corporation, although, as a matter of fact, it was insolvent when the sale was made or attachment levied. To destroy the rights of such bona fide purchasers, or lienholders, they must have knowledge, or be chargeable with notice of the trust character of the property of the corporation with which they are dealing. There must be an intent or attempt to acquire a preference or priority as to trust property, before a court of equity will annul or set aside sales, or attachment proceedings, had in good faith, and without knowledge or notice of such trust relations. The judicial and legislative history of the statute in question is, in short, as follows:

"The statute was only intended to settle what had theretofore been a disputed question as to the common law of this state upon that subject. The question was, however, settled in the case of O'Bear Jewelry Co. v. Volfer & Co., 106 Ala. 205, 17 South. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31, and settled to the effect that the assets of an insolvent corporation were not a trust fund; but it was intimated in that opinion that the converse should be the law, though the Legislature only could so make it. And the statute was probably enacted upon the faith and strength of that decision, and to accomplish the ends and for the purposes sought in that suit, which could not be attained for the lack of such statute. However, theretofore there had been numerous decisions of this and other courts holding that the funds of an insolvent corporation were a trust fund to be administered for the benefit of its creditors [but which were overruled in the O'Bear Case, supra]." City Bank & Trust Co. v. Leonard, 168 Ala. 412, 53 South. 73.

"In the case of Goodyear Rubber Co. v. Scott, 96 Ala. 439–441, 11 South. 371, which was decided after Corey v. Wadsworth, though reported earlier, the same learned Chief Justice said: 'In Corey v. Wadsworth (99 Ala. 68, 11 South. 350, 23 L. R. A. 618, 42 Am. St. Rep. 29), we cited and collated many authorities, and reached the following conclusions: That the capital stock and assets of an insolvent corporation are, in a sense, a trust fund, of which the governing board are trustees for the benefit of the creditors, and that such governing board cannot convey or assign such corporate assets in such manner as to secure to themselves, or to any member of their board, as a creditor of the insolvent corporation, a preference over the other creditors. This principle rests not alone on the fact that the assets are a trust fund, of which they are the trustees. It is largely supported by the undue advantage the knowledge they necessarily have of the corporation's embarrassments will secure to them over outside creditors, and by the fact that in paying or securing themselves no antagonistic interest is represented. They deal with themselves, and are thus both seller and buyer. Transactions of this kind by any one filling a fiduciary relation are voidable, if seasonably objected to by the beneficiary. We did not, however, go to the length of holding that directors of an insolvent corporation are so completely hampered by the trust relation they sustain as to disable them from paying or securing some creditors, in preference to and at the expense of others to whom the corporation is indebted.' " City Bank & Trust Co. v. Leonard, supra.

"Chief Justice Stone, in Corey v. Wadsworth, tersely expressed the true rule as follows: 'At what stage of a corporation's affairs must it be pronounced insolvent, so as to bring it within the principle we have declared? It is not enough that its assets are insufficient to meet all its liabilities, if it be still prosecuting its line of business, with the prospect and expectation of continuing to do so—in other words, if it be, in good faith, what is sometimes called a "going" business or establishment. Many successful corporate enterprises, it is believed, have passed through crises, when their property and effects, if brought to present sale, would not have discharged all their liabilities in full. We feel safe in declaring that when a corporation's assets are insufficient for the payment of its debts, and it has ceased to do business, or has taken, or is in the act of taking, a step which will practically incapacitate it for conducting the corporate enterprise with reasonable prospect of success, or its embarrassments are such that early suspension and failure must ensue, then such corporation must be pronounced insolvent.' " City Bank & Trust Co. v. Leonard, supra.

It does therefore seem probable that the intent of the Legislature in enacting the statute in question was to restore the law of this state as it was declared by this court to be for 50 years before the decision in the O'Bear Case, which overruled all former decisions on the subject. We are of this opinion because the court in the O'Bear Case said of the trust fund doctrine that it is equitable and righteous, but that it requires a statute to make it law, and that the Legislature ought probably to so provide; and the Legislature did soon thereafter so provide, and the language of the statute is practically if not literally taken from the language of the court in some of the decisions which were overruled by the O'Bear Case.

"In this case it was said: 'This whole idea, that the property of insolvent corporations is held by them in trust for creditors—is a trust estate in their hands—and to be administered by chancery as such, originated in a dictum of Judge Story in Wood v. Dummer, 3 Mason, 308, Fed. Cas. No. 17,944. It had no existence at common law, and has none to this day in the law of England; but is distinctly a creation of some courts in this country, and is known in jurisdictions where it obtains as the "American doctrine." This court has quite recently adopted it, and held in the cases of Corey v. Wadsworth, 99 Ala. 68 (11 South. 350, 23 L. R. A. 618, 42 Am. St. Rep. 29), Goodyear Rubber Co. v. Scott & Co., 96 Ala. 439 (11 South. 370), and Gibson v. Trowbridge Furniture Co. (96 Ala.) 357 (11 South. 365), that the assets of an insolvent corporation is impressed with a trust in the hands of the company, in favor of its creditors first, and then in favor of its stockholders.' The opinion also suggests legislative action on the subject, by adopting the language of Dillon, J. (Buell v. Buckingham & Co., 16 Iowa, 284, 85 Am. Dec. 516), in which in referring to the trust-fund doctrine, he says: 'This condition of the law may constitute a good reason for giving pro rata to outside creditors, but the Legislature must furnish the remedy.' " City Bank & Trust Co. v. Leonard, 168 Ala. 415, 416, 53 South. 71, 74.

We are, therefore, of the opinion that the statute should be construed in the light of these decisions, and this history of its origin, and should be given the effect and application which was given to the doctrine before

the decision in the O'Bear Case, which has overruled many former decisions on the subject.

So construing the statute, the allegations of this bill, as amended, are not sufficient to authorize the injunction, and the demurrer on this ground should have been sustained.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.