(135 So. 317)

**LEYDEN et al. v. CALHOUN CO-OP. CREAMERY CO.**

7 Div. 16.

Supreme Court of Alabama.

May 14, 1931.

Rehearing Denied June 25, 1931.

Young & Longshore, of Anniston, for appellants.

Blackmon & Carter, of Anniston, for appellee.

THOMAS, J.

The bill as amended was held subject to demurrers assigned. The suit was by the lessees of the co-operative marketing association corporation against the latter, alleged to be insolvent, and the bill further shows that the charter had expired, the violation of the agreement and purpose of the lease, and the misappropriation of the moneys paid as rental, and prays for the appointment of a receiver of rents.

It will be necessary to state somewhat at length the averments of the amended bill.

The bill was filed by the Leydens and the McClellans, the lessees, against the Calhoun Co-operative Creamery Company, a corporation, a co-operative marketing association organized under section 7127 et seq. of the Code of 1928. See Warren v. Alabama Farm Bureau Cotton Ass'n, 213 Ala. 61, 104 So. 264; Bishop v. Alabama Farm Bureau Cotton Ass'n, 215 Ala. 388, 110 So. 711; Dothan Oil Mill Co. v. Espy, 220 Ala. 605, 127 So. 178. It avers that the respondent corporation was engaged in the business of selling dairy products, and owned a certain plant and machinery used in the conduct of that business; that the corporation was composed of a group of men living in that county, who owned cows and conducted dairies, and that such owners paid into the corporation, at the time of its organization, a certain sum of money for each cow owned, and in return therefor was issued stock in the corporation pro rata; that each stockholder was entitled to sell and deliver milk to the respondent and share in its profits in proportion to the amount of stock owned.

It is further averred that the corporation had been unsuccessful, and that on the 15th day of December, 1927, owed approximately $6,000 for milk which it had purchased from said stockholders, and for which it had not paid; that in addition to this milk purchase price indebtedness the corporation owed $4,000 to the Commercial National Bank of Anniston, Ala., for which the corporation had given its note and mortgage on said properties that were leased to complainants, selling and conveying to the said bank all of its machinery and equipment, and seventeen of its individual stockholders had personally indorsed the $4,000 note. It is further averred that on the 15th day of December, 1927, the respondent corporation entered into a contract with the complainants, leasing to them for a term of five years the said plant, machinery, and equipment of the respondent corporation, upon the consideration that complainants agree to purchase the $4,000 note owed by the corporation to the Commercial National Bank, to extend the same for five years without interest, to discharge and release the individual indorsers from their liability on said note (Maulitz v. Jones

[Ala. Sup.] 133 So. 701), to take over a certain lease contract of respondent to one Hamilton whereby the corporation was bound to pay $150 per month rent, and, as an additional consideration, to pay to the respondent corporation $200 per month as rent for the use of said machinery and equipment. The complainants further agreed to pay to every member of the respondent corporation furnishing milk to them a certain designated price during the life of the contract, provided that the respondent would first file with the complainants the written contracts of such members agreeing to deliver all milk produced by them to the complainants. It is agreed between the parties and so stipulated in said contract that the "object and purpose of this contract is to afford a market to the members of the party of the first part (the respondent corporation), and to insure a reasonably steady supply of milk to the party of the second part (the complainants). And the said party of the first part hereby binds itself, so far as is possible, to secure to the party of the second part a steady supply of milk from its members, and the party of the second part hereby agree and bind themselves to give preference to the members of the party of the first part in purchasing milk needed in the business."

The bill further avers that twenty-one of the stockholders of the respondent corporation signed milk contracts with complainants as that the corporation had with its stockholder members. These contracts are exhibited by the bill, and one of the material facts of the milk contracts was an agreement by the complainants binding themselves to take and pay for all good-flavored milk produced by the stockholders signing the said milk contracts according to the terms of the contract.

The bill further alleges that they agreed in the lease that at the end of five years the corporation would pay the $4,000 note which the complainants agreed to take over, and did take over, and renew for five years; that the complainants did immediately after the execution of said contract purchase said note and mortgage from the Commercial National Bank, took over the machinery and equipment, and commenced operation, and, from the date of the lease contract to the date of the filing of the bill, complainants had paid to respondent corporation the sum of $200 per month, and had purchased from the individual stockholders signing milk contracts all good-flavored milk that had been presented to them from said parties, and had paid to them the price agreed on in said milk contract made by and for them in the lease and per individual contracts the subject of and as a part thereof.

It is further shown by the bill that the original contract provided that any additional machinery and equipment that might be added from time to time by the complainants should be the property of the latter, and that, since the execution of the contract, complainants have replaced a great deal of the machinery by adding new machinery that was required.

The bill further alleges that, notwithstanding the agreement that the stockholders of the respondent corporation who signed milk contracts agreeing to deliver to the complainants all milk produced by them, one by one they ceased, delivering milk to other creamery companies in that vicinity, and that within a space of six months after the execution of the contract only five of the twenty-one stockholders were still delivering milk to complainants as they had agreed to do; that, by reason of this failure or default of the stockholders, the complainants have been forced to purchase milk in the open market, and to expend approximately $200 per month more than they would have had to expend had said stockholders continued to deliver milk to them per the contracts.

The bill further shows that the corporation has allowed its charter to expire and said corporation has no assets other than the leased machinery and equipment, and the sum of $200 per month which the complainants are paying to the corporation per the lease. It is further alleged that said machinery and equipment has practically all been condemned by the state board of health as unfit for use, and that the said equipment is practically worthless; that the corporation is paying out the said sum of $200 per month, which the complainants pay, to the individual members of the respondent corporation on a debt of $6,000, which the corporation owes to these individual members; that the individual members who are receiving their pro rata share of the said $200 are each stockholders in respondent corporation, and are the individuals who were indorsers on the $4,000 note to the Commercial National Bank, and the individuals who signed the milk contracts with the complainants and who have declined to deliver milk to the complainants per the contracts exhibited.

The bill further alleges that the respondent corporation is insolvent, is taking the major part of its assets—the $200 per month —and paying it out as it is paid in by complainants, and, if this continues, at the end of five years complainants will hold a note against the corporation which they will be unable to collect and which they took up pursuant to the lease contract. With the filing of the bill of complaint the complainants delivered $200 to the register of the court, and in the bill offer to pay said sum into court on the 15th day of each month as specified in the contract.

The complainants pray that the court will appoint a receiver to take charge of the said

sum of $200 per month, and that out of said monthly payment the register be directed to repay to the complainants such proportionate part of the said $200 as their debt of $4,000 bears to the total indebtedness of the respondent corporation, and that the balance be paid over to the other creditors of the respondent corporation. There is also a prayer for general relief if the complainants are mistaken in the relief specifically prayed.

The demurrers of respondent being sustained to the bill as amended, complainants appeal.

It is provided by statute that a co-operative marketing association may be organized and function. Section 7142, Code of 1928, and authorities. The decisions are to the effect that assets of insolvent corporations constitute a trust fund for the payment of creditors, which may be marshaled and administered in equity. Section 7062, Code of 1928, and authorities; Sugar Factories Const. Co. v. Fies, 213 Ala. 556, 105 So. 590, 591; Jaggers v. Howell, 206 Ala. 337, 89 So. 604; Faircloth v. Farmers' Guano Co., 204 Ala. 148, 85 So. 395; City Bank & Trust Co. v. Leonard, 168 Ala. 404, 53 So. 71; Corey v. Wadsworth, 99 Ala. 68, 11 So. 350, 33 L. R. A. 618, 42 Am. St. Rep. 29; Goodyear Rubber Co. v. Scott Co., 96 Ala. 439, 11 So. 370, Bank of St. Marys v. St. John, Powers & Co., 25 Ala. 612.

It may be said that, under section 7062 of the Code, declaring that the assets of an insolvent corporation constitute a trust fund for the payment of creditors, which may be marshaled and administered in a court of equity, and the averments in the bill of complaint that the corporation is indebted to the complainants in the large sum indicated, and that it is also indebted to numerous others, viz., the individuals who furnished milk to the corporation and have not been paid for same, and the specific averment that the corporation is insolvent, is all that is necessary to be averred to state a good bill. The case of City Bank & Trust Co. v. Leonard, 168 Ala. 404, 412, 53 So. 71, gives a complete history of the enactment of this statute. It is of knowledge that at one time it was declared that the assets of an insolvent corporation constituted a trust fund for the payment of creditors, whether or not there was a statute so stating; that in O'Bear Jewelry Co. v. Volfer & Co., 106 Ala. 205, 17 So. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31, it was settled that the assets of an insolvent corporation should not be a trust fund for the benefit of creditors, but it was intimated in the opinion in O'Bear Jewelry Co. v. Volfer & Co., that the assets should be a trust fund for the benefit of creditors, and that only the Legislature could make it so. And from the time of the decision in City Bank & Trust Co. v. Leonard, supra, this court has consistently held that the assets of an insolvent corporation could be marshaled and administered in a court of equity for the benefit of its creditors. The statute was enacted to settle what had been a disputed question under the common law.

Leaving out of view the alleged breach of the milk contracts by the individual members, the action of the state board of health, and the other grounds which the appellants state for equitable jurisdiction, the bill was properly drawn under section 7062. In the case of Sugar Factories Const. Co. v. Fies, supra, this court laid down the rule that it was not necessary that the other creditors be invited to come in or participate in the litigation, but it was only necessary to aver facts authorizing the marshaling of assets of an insolvent corporation, to aver that the complainants are creditors of the corporation, that there are other creditors, and that the corporation is insolvent. These averments are contained in the bill. In the Sugar Factories Const. Co. v. Fies, supra, it is said: "We construe the bill as a bill by simple contract creditors to marshal and administer for the common benefit of all creditors, who may come in and prove their claims, the assets in this state of an insolvent corporation according to the provision of section 3509 of the Code of 1907, reproduced in the Code of 1923 as section 7062. If this be the correct construction of the bill, we find no sufficient reason on which to deny its equity. Jaggers v. Howell, 206 Ala. 337, 89 So. 604; Warren v. Kilgroe, 176 Ala. 476, 58 So. 432."

The bill contains equity, and the demurrer should have been overruled.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.